## SALTER v. AVIATION SALVAGE CO.

[91 South.  340.  No. 21812.]

1. FRAUD. *Sales.  "Fraud" defined; silence on part of seller alone sufficient to avoid sale.*

   Fraud consists of anything which is calculated to deceive, whether it be a single act or a combination of circumstances, or acts or words which amount to a suppression of the truth, or merely silence, or other artifice by which a person is deceived, but to constitute a ground for avoiding a sale of personal property, the seller must have been under obligation to speak—mere silence alone not being sufficient.

2. SALES. *Buyer who received the particular property purchased not entitled to other property expressly excepted by written contract, on ground of concealment by seller as to his ownership.*

   In a case where the purchaser of personal property was led to believe by the seller that he was getting, by his purchase, all the property of a certain character owned by the seller, and the contract of sale, which was in writing, expressly excepted therefrom certain property which the seller falsely represented to the purchaser that he did not own, when in fact it was owned by the seller, the purchaser is not entitled, under his contract of purchase, to such excepted property on the ground of such conceal-ment by the seller; the latter being under no obligation to inform the purchaser of such ownership, for the reason the purchaser got what he bargained for—such concealment not being to his hurt.

APPEAL from chancery court of Clay county.

HON. A. J. MCINTYRE, Chancellor.

Bill by S. G. Salter against the Aviation Salvage Company. Judgment of dismissal, and plaintiff appeals. Reversed and rendered.

*G. G. Lyell,* for appellant.

While the books are reluctant in giving an exact definition of fraud, they all agree that for fraud to exist there

must be four elements present to induce fraud. (1) There must be a duty; (2) there must be a correlative right vested in the party defrauded; (3) there must be a wilful violation of the duty; and (4) there must be a resultant injury to the party owning the right.

They made a contract with Salter on January 14, 1920, for an option to buy the property sold to Salter on January 12, 1920, from which sale said property was expressly excepted. The appellees made another contract January 21, 1920, to purchase from Salter the property so purchased by him on January 12, 1920, from which sale said property in question was expressly excepted. In Salter's bill of sale to McClellan, which the appellees claim was pursuant to said contracts of January 14, and January 21, 1920, or should have been—in this bill of sale to McClellan, the property in controversy was expressly excepted.

In McClellan's deed of trust to Salter for the deferred payments on the property sold appellees by Salter the property in question is expressly excepted. Salter never sold or intended to sell the property in controversy to appellees in any of the transactions referred to, and they never intended to buy the property in controversy in any of those transactions, but knew they were not getting that property. Then, as a matter of absolute axiomatic demonstration, the appellees had no claim to the property in controversy and this case must be reversed.

Our theory of the case is that all prior agreements, written or verbal, were merged into the deed. And that the court erred in admitting or considering any other prior agreements, contracts, letters by other parties never included in the pleadings, and the great mass of hearsay testimony injected in the case, all of which was introduced over the objections of complainant. That Salter acquired this property after he had bargained with defendants and at a time when neither Salter nor the defendant had any reason to believe that he would acquire same, and all knew that when the bargain was made between them that it was excluded from their bargaining by the statement made by

the auctioneer representing the government, that the government would retain this specific property. Furthermore, that all prior bargaining, officers, bid and dickerings between the parties was merged into the deed of conveyance executed and delivered on the 26th, day of January, 1920, by Salter to defendants' agent, J. J. McClellan, and as evidenced by McClellan's deed of trust back to Salter. *Bratton* v. *Howard,* 52 So. 210.

Furthermore the defendants did not pray for a reformation of their contract with Salter, nor of his deed to them, and the proof was insufficient anyway.

In conclusion we respectfully submit that a decree should be entered for appellant in this court.

*Roberds & Beckett,* for appellee.

The chancellor, who heard the testimony and saw the demeanor of the witnesses on the stand, held that the appellant had practiced a legal fraud. What is a legal fraud?

(1)   No Definition Laid Down.   "What constitutes a case of fraud in the view of courts of equity, it would be difficult to specify. It is, indeed, part of the equity doctrine of fraud not to define it, not to lay down any rule as to the nature of it, lest the craft of men should find ways of committing fraud which might escape the limits of such a rule or definition. The court very wisely hath never laid down any general rule beyond which it will not go, lest another means for avoiding the equity of the court should be found." Bouvier's Law Dictionary, Volume 2, page 1306.

"It is utterly impossible to formulate any single statement which shall accurately define the equitable concep-tion of fraud, and which shall contain all of the eleme which enter into that conception; these elements a various, so different under the different circumstan equitable cognizance, so destitute of any common unity, that they cannot be brought within any formula." 2 Pomeroy's Equity Jurisprudence

par. 873.  See, also, *Myers* v. *Farrell,* 47 Miss. 281.; *Staton* v. *Bryant,* 55 Miss. 261.

(2)   Definition.  A reference to some of the definitions given in the book will visualize before the mind a background against which to apply the facts of this case.  Actual or positive fraud includes cases of the intentional and successful employment of any cunning deception, or artifice, used to circumvent, cheat, or deceive another.  1 Story, Eq. Jur., par. 186; 1 Story, Eq. Jur., ch. 7; *Tyler* v. *Savage,* 143 U. S. 79; 12 Sup. Ct. 340, 36 L. Ed. 82; Bouvier's Law Dictionary, vol. 2, p. 1304.

It may be stated as a general rule that fraud consists in anything which is calculated to deceive, whether it be a single act or combination of circumstances whether, it be by suppression of the truth or suggestion of what is false; whether it be by direct falsehood or by innuendo, by speech or by silence; by word of mouth or by a look or jesture. Fraud of this kind may be defined to be any artifice by which a person is deceived to his disadvantage.  Bishop's Equity, par. 206; 2 Pomeroy's Equity Jurisprudence, (2 Ed.) par. 900; 12 R. C. L., par. 82.

Do the facts disclosed by this record show a legal fraud? There are two facts clearly established by the record, to-wit:  (1)   The appellees purchased from the appellant all of the property of every kind or character that appellant purchased from the government, and (2) that the appellant got nothing from the government, except by purchase on January 12, 1920.

(1)   Appellees Purchased Everything Purchased by Appellant.  Salter, the appellant, purchased the property from the government on January 12, 1920, on January 14, 1920 he gave to D. Cottrell and John Cox, two of the appellees, and who afterwards took in as partners the other appellees, an optional contract of purchase.  In this optional contract, the property to be purchased is described of the buildings, equipments, structures, machinery, real and personal or mixed of every kind, character description purchased by the said first party at

Payne Aviation Field, about five miles north of West Point, Clay county, Mississippi, at a public sale held at said field on Monday, January 12, 1920, the intention being to include in this contract all the property of every kind purchased on said occasion by first party and the rights and privileges, if any, purchased at the time or incident to the purchase of the said property.

(2)  All Property Salter Got, He Got Under His Purchase of January 12.  The only property which Salter got at Payne Field was that purchased by him on January 12. The commanding officer had the power, or if not, all parties thought he had the power to say what property should be included within the sale.  Civilians generally, during the war, and just after the war (and this is always true during military reign) were ready to abide by the decisions of the government through its military agents.  (1)  Appellees intended to purchase and did purchase everything which appellant purchased from the government.  (2) Everything which appellant got from the government, he purchased at the sale of January 12, 1920.

(3)  Did Appellant Deceive the Appellees?  When the property was sold January 12, 1920, at public auction, it was understood that the commanding officer had the power to say what property should be included within the sale. It is evident that on January 14, two days later, when the optional contract between appellant and appellees was entered into, none of the parties knew just what would be awarded the purchaser at that sale.  The same was true on January 21, 1920, when the contract of sale and purchase between appellant and appellees was made.  But Mr. Salter, himself, testified that on the very evening of the signing of this contract on January 21, he went out to the Field and took supper with Lieutenant Whitney and Lieutenant Whitney informed him at that time that he would be awarded his oil house, under his purchase, and we say the appellant immediately conceived the idea th he could conceal this information from the appellees by this deception retain this oil house.  He said he w

to get even with the appellee. He even went to the extent
of requesting Lieutenant Whitney not to tell the appellees,
stating in his testimony on page sixty-three of the record,
"and when I found out I was (getting oil house) I cautioned
Whitney specially, don't tell them, for I am going to get
even with them." This was five days before the actual
closing of the transaction between appellant and appellees.

The appellant is a lawyer. The writer drew the optional
contract and the contract of purchase between the parties,
but the appellant brought with him from Clarksdale, al-
ready prepared, the bill of sale and the deed of trust. It
seems that the then associate of the writer, Captain Beckett,
either changed, or redrew the deed of trust, but the bill of
sale was drawn by the appellant and was not changed.
But if it should be contended that appellant did not get
this property under this purchase and, that it was given to
him, then the testimony show that it was not only given to
the appellees, but it was actually delivered to the appellees
by the commanding officer at Payne Field. See bottom of
page seventy-nine and top of page eighty of the record, as
to the flooring being secured by appellees. I might add
here, that there was realized from the flooring only two
hundred dollars according to Cottrell's testimony at the
top of page eighty-six of the record.

I respectfully submit that a net profit of twelve thousand
dollars to appellant, made over a period of sixteen days
and with the expenditure during that time of only ten per-
cent of his bid, towit, fifty-three thousand dollars was a
sufficient profit, and that the chancellor was eminently cor-
rect in his findings in this cause.

ANDERSON, J., delivered the opinion of the court.

Appellant, S. G. Salter, filed his bill in the chancery
court of Clay county against appellees, Aviation Salvage
Company, a partnership composed of several citizens of
West Point, for an accounting and to recover the value of
oil house and the flooring in five steel hangars, which

appellant alleged were his property and that appellees had wrongfully taken possession of and converted to their use.

Appellees answered the bill, denying in part its allegations. There was a trial on bill, answer, and proof resulting in a decree dismissing appellant's bill, from which he prosecutes this appeal.

It is unnecessary to set out the pleadings further than to say, appellant alleged in his bill that for a short time prior, and up to the consummation of a sale of it to appellees, he was the owner, by purchase from the federal government, of the entire personal property and equipment (with certain exceptions) used by the government in the maintenance of Payne Aviation Field, near West Point; that on the 26th of January, 1920, appellant sold to appellees, for sixty-five thousand dollars, part cash and balance in deferred payments, all said property so bought by him, except the oil house and the flooring in the steel hangars (the property in controversy) which were expressly excepted from said sale; that said sale was consummated by appellant making appellees a deed to said property in which said flooring and oil house were expressly excepted, and by appellees in turn, for the purpose of securing the deferred purchase money payments, executing a deed of trust on said property in which also said oil house and flooring in the steel hangars were expressly excepted.

Appellees admitted in their answer the allegations of the bill with reference to the execution of said deed and deed of trust, including the omission therefrom of the oil house and flooring. But they averred, in substance, that said deed and deed of trust did not speak the true terms of the contract between the parties, because it was agreed between them that appellees should take by their purchase all the property appellant took by his purchase from the government, and that, through the concealment and fraud of appellant, said oil house and flooring were omitted from said deed and deed of trust.

There are certain important outstanding facts in this case about which there is no conflict in the evidence; which

facts are as follows: The government authorized Lieutenant Whitney, Commandant of Payne Aviation Field, as its agent, to advertise and sell at public auction to the highest bidder, for cash, the personal property and equipment located on and owned and used by it in the maintenance of said field, with certain exceptions, among which were the oil house and flooring in the steel hangars, here in question. Accordingly said sale was advertised, the written specifications of which set out said oil house and flooring as among the property that would not be sold. At said sale, which took place as advertised on January 12, 1920, said exceptions were announced to the public by the auctioneer making the sale. McClellan, who to some extent at least, represented appellees in their negotiations for the purchase of the property from appellant was present at the sale, as were most, if not all, of the appellees. Appellant bought the property sold at fifty-three thousand dollars. The sale, under its terms, was required to be confirmed by the government, which was afterwards done.

On January 14, 1920, appellant gave appellees a written option to sell them all the property he had bought, at a price of sixty-five thousand dollars. This option was good until midnight January 20th. On January 21st, there was executed between the parties a written contract by the terms of which appellant sold appellees all of said property so bought by him from the government for a consideration of sixty-five thousand dollars, which provided for a cash payment and deferred payments evidenced by notes, and provided for a deed from appellant to appellees to the property, and a deed of trust from the latter to the former, on the property sold, to secure said deferred payments. After the execution of said contract on January 21st, and on the evening of that day, Lieutenant Whitney informed appellant that the government, on account of the large cost it would take to salvage the oil house and flooring in question, had authorized him to transfer and deliver said oil house and flooring to the purchaser; and accordingly they were transferred to the appellant.

Taking as true the evidence tending to prove every material fact favorable to the defense of appellees, their case may be stated as follows: On January 26, 1920, when the sale from appellant to appellees was finally closed by the deed and deed of trust above referred to, appellant knew that appellees were ignorant of the fact that the government had transferred to him, as a part of his purchase, said oil house and flooring and he concealed this fact from the appellees; and, for the purpose of preventing appellees from ascertaining that fact, appellant requested Lieutenant Whitney, at the time the latter included said flooring and oil house in the transfer from the government to him, not to inform the appellees of such transfer. And appellant stated to appellees, and the latter believed such statement, that he was selling all the property he had bought from the government.

Appellees contend, in effect, that all the facts and circumstances of the case show that they bargained with the appellant for the property in question, and that, through his concealment and fraud, it was not included in the contract evidencing the purchase and sale of said property and that therefore they rightfully took possession of it and appropriated it to their own use. They say that fraud consists of anything which is calculated to deceive, whether it be a single act or a combination of circumstances, or acts or words which amount to a suppression of the truth, or mere silence; that fraud is an artifice by which a person is deceived to his hurt. There is no fault to be found with these abstract principles of law, but appellees overlook the correlative principle that, in order to avoid a contract, there must be more than mere fraud; the property charged with the fraud must have owed the party alleged to have been defrauded some duty. He must have been under some obligation to speak when he failed to do so. Mere silence alone is not sufficient.

Applying these principles to the present case, we are unable to see how appellees were defrauded by the conduct of appellant. Appellant occupied no relation  of trust or

129 Miss.—15.

confidence toward appellees; on the contrary they appear to have been dealing at arm's length. Appellees got exactly what they bargained for. They agreed to pay appellant sixty-five thousand dollars for the property, leaving out the flooring and the oil house, and so expressed it in the deed and the deed of trust finally evidencing the contract. It is true appellees thought they were buying all the property which appellant had bought, but it is not true that they thought they were buying the flooring and the oil house. Concede, for argument's sake, that they were led into that state of mind through the fraud of appellant. The question is: How were they hurt by such conduct on the part of the appellant? We are unable to see. If they had bought all of the property for sixty-five thousand dollars, and appellant, by artifice of some kind, had withheld from the sale a part of it, we would have a different case. As we see it, if appellees were to get the property in question, under the undisputed evidence in the case, they would get more than they bought.

There seems to be no controversy about the value of the flooring and the oil house. As we understand the evidence, they were sold by appellees and netted them one thousand six hundred and fifty dollars. It follows from these views that the case should be reversed.

*Reversed, and judgment here for appellant.*