### KING et al. v. JONES et al.

(In Banc. Feb. 25, 1946. Suggestion of Error of Appellees Overruled and Suggestion of Error of Appellants Sustained and Final Judgment Entered in Accordance with the Stipulations of Appellants, May 27, 1947.)

[24 So. (2d) 860. No. 36053.]

John S. Holmes, Henry & Barbour, and L. J. Wise, all of Yazoo City, for appellants.

Ray, Spivey & Cain, of Canton, Miss V. Ruth Campbell, Bridgforth & Love and J. G. Holmes, all of Yazoo City, Fielding L. Wright, of Rolling Fork, Brunini & Brunini, of Vicksburg, and Vinson, Elkins, Weems & Francis and Thomas Fletcher, of Houston, Tex., for appellees.

670

Argued orally by **J. S. Holmes** and **J. F. Barbour, Jr.**, for appellants, and by **Allen Bridgforth** and **Thomas Fletcher**, for appellees.

**Griffith, J.**, delivered the opinion of the court.

The land in controversy is ten acres off the south end of the E½ of SE¼ Sec. 24, T. 10 N., R. 3 W., in Yazoo County, and the complainants are the heirs at law of Emanuel King, who died intestate in 1938.

On January 13, 1903, Emanuel King acquired the title in fee to the entire SE¼ of said Section, Township and Range, and on August 7, 1918, Emanuel King conveyed to his neighbor Sam Jones "20 acres off the south end" of said quarter section by deed duly executed and recorded. This is a good legal description as all parties concede. On February 4, 1919, Sam Jones reconveyed to Emanuel King the 10 acres first above described, this deed having been filed for record on February 25, 1919, and recorded two days later.

On December 14, 1918, Emanuel King presented to the Federal Land Bank his application for a loan of $1,350 on his land in Yazoo County, said to be 344 acres. The application described the land owned by him as including with others lands the entire SE¼, Sec. 24, but as already noted the application was in error in including the entire SE¼ for the reason that King had conveyed "20 acres off the south end" thereof to Sam Jones, and at the time of the application Jones had not reconveyed any part of it.

The description contained in the application was furnished to Mr. T. H. Campbell of the Yazoo County Bar who was employed to examine and certify the title. At what time this description was furnished to him and when he examined the records is not shown, Mr. Campbell being now dead, but it is fairly certain that he made the examination some day or so, or a few days, before he concluded the preparation of his transcript of the examination and it is shown that he mailed his abstract on the title on February 27, 1919, the day that the reconveyance to King was recorded and only two days after it was filed for record. It may be assumed as fairly certain that when Mr. Campbell concluded his examination, the records disclosed that Sam Jones owned the ''20 acres off the south end of the SE¼ Sec. 24'', and therefore in reporting on the title Mr. Campbell reported as good in King not the entire SE¼ but the quarter section less 20 acres off the south end thereof, and as his reason for not including the entire quarter section and for excluding 20 acres, he stated in the caption of the abstract that the 20 acres were owned by Sam Jones. With the abstract Mr. Campbell sent a plat drawn by him showing that the 20 acres off of the south end of the said SE¼ were not to be included in the trust deed.

The report on the title was examined by the attorneys for the Land Bank and finding the title good, as reported, the Land Bank prepared a deed of trust and in drawing out the description the Land Bank inserted it in the same words which Mr. Campbell had used in his caption to the abstract, to-wit: ''The SE¼ of Section 24, less 20 acres off the south end owned by Sam Jones, T. 10, R. 3 W.'' This deed of trust was forwarded to Mr. Campbell by the Land Bank on March 10, 1919, and with the same enclosure was an amended application to be executed in lieu of the original application, making the description in the application correspond with that in the deed of trust as drawn, in which connection it is to be noted that the amended application was for a loan of $1,300. The

deed of trust for the $1,300 instead of $1,350, and the amended application were executed by King on March 15, 1919, and thereupon forwarded to the Land Bank.

On May 5, 1934, the trust deed to the Land Bank was foreclosed by trustee's sale, the Land Bank became the purchaser, and the trustee's deed to the Land Bank carried the description precisely as in the deed of trust and when subsequently the Land Bank conveyed the property to Childress again the same description precisely was used.

It is manifest from what has been stated that at the time the Land Bank prepared the deed of trust and the amended application, it was acting upon the knowledge and information then in its possession that King did not own the said south 20 acres and that the 20 acres were owned by Jones and, being so informed the Land Bank did not intend, for obvious reasons, to take a mortgage which would include that 20 acres or any part thereof. It is manifest also that in drawing out the description as it did the Bank simply adopted the language used in the caption of the abstract, and it is equally manifest that the reason the caption was so worded was by way of explanation for not including the 20 acres.

Strange to say, however, that having now ascertained that Sam Jones did not at the time of the execution of the deed of trust own the entire 20 acres excepted, the Land Bank takes the position that the mistaken recital in the exception as to Jones' ownership makes the exception void for uncertainty, with the consequence that the Land Bank acquired the entire SE¼. In other words, that although the Land Bank had taken pains to exclude the 20 acres both from the deed of trust and from the amended application, their deliberate and studied effort so to exclude has produced the anomolous result that they were included. The contention when exposed to the light is that the knowledge possessed by the Bank at the time of the transaction it intended to exclude the 20 acres, but that now with its subsequently acquired knowledge it

should be permitted to maintain that it intended to include the 20 acres. All that is required to demonstrate the unsoundness of such a contention is its statement.

It serves, however, to point up the validity of the rule recognized in Barksdale v. Barksdale, 92 Miss. 166, 174, 45 So. 615, that where there is a perfect legal description, —and especially so when as here it is one by which any competent surveyor could locate unerringly upon the ground the land intended, without reference to anything de hors that description,—the perfect description will not be affected by a non-essential or circumstantial reiteration or attempted redescription of what had already been perfectly described, and the rule is applied with less hesitation when the reiteration or redescription is by such shifting and easily mistaken terms as "owned by" or "known as" or any other words of mere circumstantial nomenclature. Let us suppose, for instance, that the language had been "occupied by Sam Jones," and that a few days before Sam Jones had moved away.

The rule was again stated in Ladnier v. Cuevas, 138 Miss. 502, 507, 103 So. 217, as follows: "Where there is sufficient certainty in a conveyance, and afterwards an additional description which fails in point of accuracy, the latter should be rejected as surplusage. . . . If a description in a conveyance is true and perfect in all respects without certain words, and false and improper with them, such words must be rejected. . . . Words necessary to ascertain the premises conveyed must be retained, while words not necessary for that purpose should be rejected if inconsistent with the others." And again in Dunn v. Stratton, 160 Miss. 1, 7, 133 So. 140, 142, substantially the same rule is thus stated: "If any item is to be rejected as impossible, or varied as erroneous, the item which is the less certain and about which it is the more probable the grantor was mistaken will be thus rejected or varied." See Pegram v. Newman, 54 Miss. 612.

The description "SE¼ Section 24, less 20 acres off the south end, T. 10, R. 3 W. in Yazoo County" makes a

perfect legal description and contains all the terms necessary therefor, with the result that the mistaken additional words "owned by Sam Jones" are to be rejected, and no further authority for so doing is needed than the cases above cited, although precisely in point is the text 16 Am. Jur., Deeds, Sec. 318, p. 619.

The defendants argue that these heirs should not be permitted to prevail because their decedent King knew at the time he executed the deed of trust that he had reacquired 10 acres of the 20 from Jones and that King knew that the original intention of the Land Bank was to obtain a deed of trust on all the land owned by him and that this intention as thwarted by his failure to disclose his reacquirement of the 10 acres so that it could be inserted in the trust deed. The circumstances under which the reconveyance of the 10 acres to King was made are not disclosed by the record. King is dead and Jones the other party testified that he had no recollection of it whatever. If, however, we assume that King knew of it when the deed of trust was executed, he knew also that the Land Bank was willing to make the loan for the reduced amount of $1,300 on the land excluding the 20 acres and he may well have assumed that the reduced amount was because of the reduced acreage, wherefore he was under no duty to insist upon giving them more than that required by the deed of trust and the amended application sent to him for his execution; besides which he might well have apprehended that to bring up the feature of including the 10 acres then of small value might further delay the completion of the papers for his loan then already three months in process of final consummation. It is our opinion, therefore, that nothing can be made in defendants' behalf of the argument mentioned in this paragraph. Compare Salter v. Aviation Salvage Co., 129 Miss. 217, 91 So. 340, 26 A. L. 987.

A large part of the record and arguments is taken up with the contention that the deed of King to Jones of August 7, 1918, for the 20 acres did not correctly describe

the land intended. That deed is free from ambiguity, patent or latent, and this not being a proceeding to reform it, inquiry into its meaning or purpose is confined to the deed as it reads, and all the mass of evidence and discussion to the contrary has no real place in the case.

Reversed and remanded.