JOHN FAIRLY v. JOHN THOMPSON et al.

CHANCERY: FRAUD: DECREE IN PROBATE COURT OBTAINED BY FRAUD SET ASIDE.—
The testator, in his lifetime, and after the publication of his will, gave all his slaves, thereby bequeathed, to those of his children whom he had not previously advanced; and the executor, by mistake, returned the slaves so given and their increase in his inventory. The heirs of one of the children which had been advanced procured a decree for distribution of the increase of the slaves by joining in their petition for that purpose as co-complainants, but without their knowledge or consent of the children to whom the slaves had been given. *Held*, that the uniting these parties as co-complainants, without their consent, was, under the circumstances, a fraud upon the jurisdiction of the court, and the executor was entitled, as against the others, to a decree in a court of chancery enjoining the execution of the decree for distribution.

APPEAL from the Chancery Court of Greene county. Hon. William M. Hancock, chancellor.

The appellant, John Fairly, filed his bill in the court below, against John Thompson and Daniel Thompson, heirs of their mother, Margaret Thompson (formerly Fairly), who was one of the heirs of John Fairly, Senior, deceased, and also against two others, who were the solicitors of said Thompson in procuring the decree sought to be enjoined.

The bill charges that John Fairly, Senior, being the owner of a number of slaves, in the year 1837 made and published his last will and testament, by which he disposed of all his said slaves to his wife and certain of his children. Those of his children who were omitted in the will, and among whom was Margaret Thompson (mother of defendants, John and Daniel), having been previously provided for by suitable advancements. In 1839, his wife died, and said John Fairly sold to complainant the surviving slave which had been bequeathed to her in the will, and, being very old, discontinued housekeeping, and in 1842 gave his slaves to his several children, as he had bequeathed them in his will, and delivered possession of the slaves and their increase born since the publication of the will. These several donees from that time have held possession of the slaves so given and their increase up to the pre-

sent time.  That said John Fairly died in 1854, and did not then own a single slave.  The will appointed the testator's wife executrix, and the complainant executor, and made no disposition of other property, except to confirm some previous advancements and to make a nominal bequest of twenty dollars to two persons.  The bill states that between the time of the gift in 1842 and the death of John Fairly, Senior, in 1854, the female slaves had given birth to several children, the names of which are set out.

That the complainant, upon the death of his father, finding the will, and being therein named as executor, and being ignorant of his duty, and there being no lawyer in that county (Perry), consulted the judge of the Probate Court and one Halleman, a friend and neighbor, as to his duty; and under their advice, and not knowing the legal effect of the transactions in reference to the slaves, presented said will for probate, and procured the same to be probated and recorded.  Complainant qualified as executor, and an inventory and appraisement were ordered to be returned, and being told that under the circumstances an inventory and appraisement was a mere matter of form, and not knowing that it would affect his rights, he inventoried all the slaves so given by said John Fairly, and their increase up to the time of his death.  That none of these slaves were then in his possession as executor, nor have they since come to his possession.

That in June, 1856, certain attorneys (who are made defendants), acting in confederation with John Thompson and Daniel Thompson, seeing the advantage which the proceedings so commenced by the complainant gave them, though well aware of the true condition of the property, and that it had been improperly inventoried, determined fraudulently to avail themselves of the advantage thus offered by the ignorance and mistake of complainant; and, with this purpose, filed a petition in the Court of Probates of Perry county, and united in said petition as co-complainants all the other children and heirs of John Fairly, deceased, but without their knowledge or consent.  That in this petition they set forth the will and the probate thereof, and noting the names of the slaves comprising the increase, claimed that said slaves were assets of the testator, and being undisposed of by the will, were subject to distribution, and prayed for distribution accordingly.

The complainant received notice of this petition. He had spoken to a lawyer in Clarke county to attend to the settlement of the estate, but he failed to attend, and being wholly ignorant of the mode of resisting the petition, he failed to answer the same, and a *pro confesso* was taken against him by the counsel for the petitioners, who submitted the cause for hearing on said *pro confesso* and the inventory. The Probate Court, however, disallowed the petition; and thereupon the said attorneys, describing themselves as counsel for "John Thompson *et al.*," filed a petition for and procured a writ of error; and that the High Court of Errors and Appeals, acting on the record containing said petition *pro confesso*, and inventory, reversed the decree of the Court of Probates, and rendered a peremptory decree that distribution be made according to the prayer of the petition.

That all of these proceedings were commenced and prosecuted without the consent of the other children of said John Fairly, Sr., and that they now disavow in writing such authority.

That he has never had possession of the slaves so directed to be distributed as executor or otherwise, except those which were given to him as before stated, and that they are not assets of the testator.

The prayer is for an injunction against the execution of said decree, and that said John and Daniel be required to consent that said decree be set aside, and that complainant be allowed to answer the petition, make proof of the matters set forth in the bill, or for general relief.

To this bill the defendants filed a demurrer, which being sustained, the complainant appealed.

*W. P. Harriss,* for appellant, made the following points :—

1. The testator having disposed of, in his lifetime, all the property mentioned in the will, the will itself is superseded and revoked by implication. *Bridges* v. *Duchess of Chandos*, 2 Ves. Jr. 428; *Cooper* v. *Cooper*, 4 Barr, 88; 1 Williams on Exors. 167, note.

2. It is apparent that the property ordered to be distributed is not assets of the estate, and, therefore, not under the jurisdiction of the court. As to all of the slaves, except those in possession of complainant, the court has no power even to force a compliance with its order, inasmuch as these slaves are not and never have

been in the possession of the executor. It is true that as to those in his possession, through his ignorance and default, the court could compel distribution, upon the ground that he would be now estopped from denying that they were assets ; but this would be but to make assets where there are none, and to create for the jurisdiction of the court, by technical estoppel, a fictitious estate.

3. The uniting of the other children as co-complainants without their consent is a fraud, and even if it could now be argued that the complainant is estopped by his consent, yet if he consented, he did it upon the belief created by the fraudulent conduct of defendants that the others had also consented, and that their property was also to be distributed.

No counsel offered for the appellees.

FISHER, J., delivered the opinion of the court.

The object of this bill is to enjoin further proceedings, under a decree in the Probate Court of Greene county.

The facts are these. One John Fairly, by his will, written in 1837, bequeathed certain slaves to his children. Some years thereafter, he gave the slaves thus bequeathed to his children, and placed them in possession of the slaves. The testator died about the year 1854, and the complainant, being the executor named in the will, inventoried the slaves which had been disposed of by the testator in his lifetime as part of his estate. This inventory is alleged to have been made through mistake.

The appellees, John and Daniel Thompson, filed a petition in the Probate Court of said county for distribution, and united in this petition, without their knowledge or consent, the other children or parties alleged to be co-legatees, or distributees, of said estate. These other parties disclaimed, according to the allegations of the bill, all interest under said decree, or agency in procuring the same.

It is clear, from the allegations of the bill, that the appellees, Thompsons, have not even a shadow of right to the property under the testator's will, for the reason that the party through whom they claim, received during the lifetime of the testator, such interest as he intended her to have in the same. Under these circumstances, they should be held to the most rigid rule in regard to the enforce-

ment of the decree in their favor. It was clearly a fraud upon the jurisdiction of the court to join the numerous parties asserting no claim to the property, without their knowledge or consent, as co-complainants with the Thompsons, who were asserting an unjust claim. Aside from the question of costs thus enhanced by the joining of these parties, the claim asserted was of such a nature, that persons desiring to maintain a reputation for fairness would not assert, supposing the bill to be true; and they should not, therefore, without their consent, be placed in an attitude of asserting it. Suppose the decree of distribution should be carried out as made, and the parties should thus appear to claim under the will, it would be an abandonment of their titles under the gifts made by the testator, and they would be severally liable to the executor in another action for the property. They cannot claim the same property both under the will, and under a deed executed by the testator long before the will took effect. If they have gained an advantage by the decree for distribution, and elect to take under this decree, the complainant can compel them to surrender all claim under the gift, and to surrender the property to him before he can be required to execute the decree, as possession of the property is a pre-requisite to its execution.

None of the parties, save those demurring to the bill, desire to bring about this state of things, and hence the impropriety of joining them in the petition without their consent.

The decree, sustaining the demurrer to the bill, must be reversed, the demurrer overruled, and the defendants required to answer in sixty days.