ROCKETT *v.* FINLEY.

(Division B.   Oct. 24, 1938.)

[184 So. 78.   No. 33346.]

T. J. **Wills,** of Hattiesburg, for appellant.

Heidelberg & Roberts, of Hattiesburg, for appellee.

312

Argued orally by **T. J. Willis**, for appellant.

**Ethridge, P. J.**, delivered the opinion of the court.

The appellant, N. W. Rockett, conducting his business under the trade name of Rockett Foundry and Machine Works, filed a bill for an injunction against Sam E. Finley, for the enforcement of a judgment obtained by default, with writ of inquiry, in the Circuit Court, for the possession of certain machinery, etc., in a replevin proceeding which was instituted in the Circuit Court.

It was alleged in the bill that on the 11th of January, 1938, Finley filed an affidavit in replevin, causing a writ of replevin to issue thereon; that the sheriff took possession of the said property named in the writ; and on the following day the appellant gave bond for the forthcoming of the property; and on the 17th of January, 1938, Finley filed his declaration in replevin, in the Circuit Court.

It was alleged that prior to suing out the writ of replevin Finley had attempted to take possession of the property, and remove it from Forrest county and the state of Mississippi; that at the time the complainant was in the hospital, in a serious condition, and could not be consulted; but an agent in charge of his business consulted with his attorney, who filed a proceeding to declare a mechanic's lien for repairs on the machinery involved in the replevin suit; that afterwards it was discovered that the plaintiff claimed ownership of the machine; and that it was agreed by counsel for the appellant and for the appellee that the proceeding to estab-

lish the lien on the machinery would be dismissed, and that Finley would institute a writ of replevin. The Circuit Court was to convene in one week from that time, at which term the cause was to be tried on writ of replevin. It was alleged that on the first day of court an agreement was entered into between the parties and their counsel that the order of dismissal might be entered on the day that the cause was set for trial, and authority was given for Finley's counsel to enter such order, it being agreed that a plea of not guilty would be filed in the replevin suit when it came on for hearing, the time to be agreed upon between the attorneys for the appellant and the appellee. It is alleged that in the second week of the term of court beginning the 24th day of January, the appellant saw appellee's attorney at the postoffice, and on inquiring when he wanted to set the case for hearing, was advised that he was not ready— the senior member of his firm being incapacitated by illness, the date would be determined later, when he would let the appellant know. The appellant advised his attorney of this conversation, and the pleadings were not filed, awaiting further advice from appellee's attorney; but in violation of this understanding, no such notice was given. Default judgment with writ of inquiry was entered by the appellee's attorney, and court adjourned without knowledge on the part of the appellant and his attorney of such judgment, until execution was issued thereon.

It is further averred that one Cox, agent of the appellee, Finley, offered the machine to the appellant for $75, but that appellant declined to buy, as he deemed the price excessive; but that subsequent to this offer Cox, who was authorized to buy and sell for the appellee, and to do such things as are usually done by the owner of property, gave the machinery, consisting of a roller and frame, to one, Wheless, on condition that he would move it. Thereupon Wheless gave the frame and roller to appellant, if the latter could make use of it; and the ap-

pellant, having heard Cox give the roller and frame to Wheless, took it, and built the steam roller, giving it a value of $1,500. In so reconstructing it, appellant used his own labor and material, thus giving the machinery its present value. It is averred that the said roller and frame were junk, having only junk value at the time it was given by Cox to Wheless, and that the expense of handling it as junk would have consumed that value, so that in fast moving the said roller and frame, as appellant was compelled to do, was worth as much as the junk value of the roller and frame.

The appellant would show that this was his defense to the suit in replevin, and that Cox was willing and ready to testify that he had given the said roller and frame to Wheless; and that the latter was ready to testify that he accepted it, and in turn had given it to the appellant, complainant in the court below, who had reconstructed it, and by his own labor and material had given the machine its present value. It is averred that the judgment in replevin herein is a fraud, obtained by deception and breach of faith, and as such should be cancelled in a court of equity; that the issue between complainant and defendant as to ownership should be heard in a court of equity, and there determined; that complainant was without adequate remedy at law in the premises; and he prayed for an injunction.

Attached to the bill for injunction was the affidavit of Rockett, the appellant, in which, among other things, he affirms the material facts set forth therein as above stated; that week after the court had convened he met Mr. Finley's attorney at the postoffice, who, being asked if he was ready to set the case for trial, replied that he was not—that he had not obtained the information from the WPA office he desired; that as soon as he got this information he would be ready—all of which was communicated by the appellant to his attorney, who advised him that there was no need to worry— that he, the attorney, would attend to the matter when advised that the case

had been set. Appellant averred that he heard nothing further until the sheriff came to his place to execute the judgment which he now prays to have cancelled.

The attorney for the appellant also made affidavit to the facts alleged in the bill, and to the method of dealing with the suit, as set out in the bill, with the exception of the statement claimed to have been made to the complainant at the postoffice by appellee's attorney; that the attorney for the appellee had never at any time advised him that he was ready to try the case, or asked him to set it for hearing, and that he had no notice that judgment had been entered until after court had adjourned.

The application for injunction was presented to the judge of the Circuit Court, who had presided when the judgment was rendered; he directed notice of hearing to be served on the defendant, and upon such hearing being had, directed the injunction to be issued, which was accordingly done, the injunction being returnable before the Chancery Court.

The appellee, defendant in the injunction suit, filed his answer denying fraud, and demurred to the bill, which demurrer was sustained by the Chancery Court, on two grounds, as it is claimed—one that the complainant had an adequate remedy at law, and the other because the agreements set forth in the bill were not reduced to writing and signed by the attorneys; it being argued that under the rules of the Chancery Court agreements between the attorneys cannot be considered unless this is done.

The rule cannot be applied to the allegations of the bill here to defeat the hearing on its allegations, because one of the principal agreements relied on was between the complainant himself and the attorney for the defendant.

A litigant who is not an attorney does not come within the purview of the rule, and it is doubtful if the rule could be applied in all cases, especially where one party to litigation has been induced to take no action because

of assurances on the part of the other that notice would be given when the matter was to be taken up for hearing. Court rules are designed to promote rather than to defeat justice; and while agreements would generally be enforced only when reduced to writing, the rule should not be abused. It is urged that the rule can only be applied when it is sought to enforce the agreement which is not in writing. We do not care to enter into a discussion of all the situations in which the rule may or may not be applied. However, we think it cannot be applied to the present case.

In regard to having a remedy at law, it is true that the Circuit Court at a subsequent term could set aside a judgment obtained by fraud, but it could not do so in vacation. The jurisdiction of equity to grant new trials at law, or in lieu thereof, to perpetually restrain the execution of a judgment unconscionably and inequitably obtained, existed in ancient times, when courts had no power to set aside judgments and grant new trials. The rule is that the remedy at law must be as effectual and speedy as the remedy in equity, before it can be said that the party has an adequate remedy at law. Irwin et al. v. Lewis, 50 Miss. 363. Furthermore, when equity has original jurisdiction of subject matter, that jurisdiction cannot be destroyed by statutes enlarging the powers of the common law courts. In some instances it may be true that both courts have coordinate powers; but where the jurisdiction of equity originally obtained it still exists, because the Constitution grants to the Chancery Court full jurisdiction of all matters in equity. The subject is dealt with in Griffith's Chancery Practice, sections 440 to 442, and cases cited in the notes. See Newman v. Taylor, 69 Miss. 670, 13 So. 831.

We think, therefore, that the court below was in error in its holding. Furthermore, the preliminary hearing was before the Circuit judge, and he issued the writ of injunction, instead of refusing it, evidently believing that the remedy at law was not adequate, and sending

the case to the Chancery Court for trial on the allegations in the bill.

Reversed, demurrer overruled, and cause remanded for further proceedings.

Reversed and remanded.