## Taft *v.* Taft

No. 43359          March 1, 1965          172 So. 2d 403

*Forrest B. Jackson,* Jackson; *Upton Sisson, Bidwell Adam,* Gulfport, for appellant.

*Thomas L. Wallace,* Biloxi, for appellee.

Rodgers, J.

This is an appeal from a decree of the Chancery Court of Harrison County, Mississippi, wherein a former consent decree was opened and set aside because of fraud alleged to have been prepetrated upon the court in the procurement of the previous decree by the appellant, Albert J. Taft. Appellee cross-appealed upon the ground that the decree opening the former decree was erroneous because it did not fully reinstate the former decree.

A synopsis of the events leading up to the final decree is necessary. Mr. and Mrs. Albert J. Taft were married in 1942, and are the parents of three children: one son, now an adult, and two daughters, ages eleven and sixteen. Mr. Taft was a member of the armed forces of

the United States until his retirement, after having served twenty years in the air force. Mr. Taft was assigned to many locations during his tenure in the air force, including Alaska and Germany. A few months after appellant returned to Keesler Air Base, he moved away from the home he had purchased for his family. Whereupon, his wife filed suit for separate maintenance and a consent decree was entered on March 20, 1961, in the chancery court, in which appellant was required to pay separate maintenance. He also deeded the residence to his wife. When appellant failed to make payments in compliance with the decree, he was arrested and held in contempt of court on April 1, 1963, and he was incarcerated in jail pending payments. He was required to post bond for the faithful performance of the order of the court. Appellant made the payments due and filed a motion asking the court to reduce future payments required of him. He also filed a bill for divorce. The two causes were consolidated, and after trial the court prepared a decree refusing to grant appellee a divorce and required appellant to pay $245 per month separate maintenance. This decree was not entered because on June 7, 1963, appellant filed a motion requesting the court to dismiss the entire proceeding. He represented to the court that they had effected a reconciliation and that they were again living together as man and wife. The parties met with the chancellor, and after consultation, a consent decree was entered finally dismissing both causes and vacating all former orders and directing the chancery clerk to return to appellant $1,000 posted with him.

Thereafter, on August 6, 1963, Mrs. Taft filed a petition asking the court to set aside the decree of June 7, 1963, and to reinstate the previous decree of March 20, 1961. She alleged that the later decree had been obtained by premeditated fraud practiced upon the court. After a hearing on this petition, the court entered an

order dated November 29, 1963, setting aside the previous order dated June 7, 1963, reinstating the consent decree of March 20, 1961. The separate maintenance payments, however, were reduced from $245 per month to $175 per month, in accordance with the ruling of May 1, 1963. The chancellor reduced the required bond to $500 and made other minor adjustments as to the amounts due Mrs. Taft under the previous order of the court.

Appellant, Taft, argues here that the decree of June 7, 1963, was a final decree, and the chancery court had no jurisdiction or authority to reopen this decree and to set it aside so as to reinstate in part the decree of March 30, 1961, after the expiration of the term of court, at which it was entered.

Appellee, Mrs. Taft, has cross-appealed and claims the court erred, in not reinstating the decree of March 20, 1961, in full, and in allowing appellant credit for two items claimed by appellee. Appellee also argues that the court erred in failing to permit two witnesses to testify, summoned by her.

The evidence in the case at bar, on behalf of the wife, is to the effect that the husband did not carry out his promise of reconciliation after the June 7, 1963 decree; that he did not come back to live with her as a member of the family but went on a vacation to Germany and that he told her he had never intended to live with her. On the other hand, the husband claims that his wife left and went to California and when she returned he went to their home but she refused to sleep with or have anything to do with him. She claimed he did not come home, except on three occasions, and that he harassed her in an effort to get her to consent to a divorce. The husband denied these charges. He claims he is a fisherman and stays out in the Gulf many days. He said he had returned to the family home on numerous occasions and had made an effort to reestablish a mari-

tal relationship with his wife, but to no avail. He offered checks to show that he had paid his wife $275 and had given his daughters $200, as well as made numerous payments on debts due by appellee and appellant at the bank. It was shown that the money he gave his family and paid on obligations due occurred within the short period of time after the consent decree had been entered.

The children agreed with the mother that the father had not been at home since the attempted reconciliation except on about four occasions. One of the children claimed she heard her parents discussing a divorce.

Thus, it is obvious that the wife made charges and the husband denied them. However, there are certain admissions made by the appellee which are revealing. Appellee admitted that she called her attorney and asked him if there were some way that she could keep her husband away from her home. She said "I asked him if we could do something with the man." She offered as an excuse for this effort to prevent her husband from coming to her house, that he kept asking her for a divorce.

During the course of her testimony, in answer to the question as to how many nights her husband had spent at home, she said: "Since May 20th, it would be two and then that night the 23rd of August, he wouldn't leave." At another place in the record, she testified that her husband came home and said "I have come home. . . . This is my home. . . . I'm going to stay", and then she said " 'there is plenty of bedrooms, take your pick', so I went to my room and I went to bed. Now I assume, I don't know, whether he stayed that night or not. The youngest one slept with me and the next morning her bed had been slept in. I didn't see him leave. I didn't hear another word out of him until . . . ." Again appellant admitted that she had permitted her attorney to make complaint to the Youth Court charging that appellant was doing nothing to support

his children. Finally, appellee testified that she did not want to agree to the reconciliation decree at the time it was entered but that the court had required her to do it. She said she was willing to do anything to get support, but did not know whether or not she was willing to make a sincere effort at a reconciliation to establish their marital relations.

At the conclusion of the testimony, the chancellor determined that the evidence showed that the defendant (appellant here) did not act in good faith and that the decree of June 7, 1963 was void. The chancellor therefore entered a decree cancelling the June 7th decree and partially reinstating the decree entered on March 20, 1963.

Judge Griffith in his Mississippi Chancery Practice § 642, at 705-706 (2d ed. 1950), discusses the reopening of decrees in the chancery court and points out one method of reopening a decree upon the ground of fraud and gives the result of his study in the following language: ''Third: A decree may be vacated and thereupon corrected by an original bill, in the nature of a bill of review, for fraud in its procurement, or upon any such state of facts as constitutes the legal equivalent of fraud; as for instance, surprise, accident and mistake, so long as these have reference to facts, as distinguished from mistakes and surprise touching the law or in the application of the law to a state of facts already actually presented and considered. It is laid down broadly that the jurisdiction and power of a court of equity to relieve against fraud and the legal equivalent thereof as respects judgments and decrees is as ample as it is to set aside a contract or other engagement procured or brought about by like means or under the operation of equivalent circumstances . . . .''

The textwriter in 30A Am. Jur. *Judgments* § 657 (1940), points out that ''Fraud and circumvention used to obtain a judgment are generally regarded as sufficient

cause for the opening or vacating thereof . . . where the party was prevented from presenting the merits of his case to the court, or where the fraud worked an imposition upon the jurisdiction of the court. The power of a court to vacate a judgment for fraud has been regarded as inherent and independent of statutes authorizing the vacation of judgments on other specific grounds."

In the case of Harper v. Barnett, 16 So. 533 (Miss. 1895), this Court said: "The Court doubtless has had the power, after the term, aside from section 940, Code 1892, to vacate the judgment on the ground that it was obtained by fraud, or that 'the judgment as entered on the record of the court did not accord with that intended to have been entered.'" See also Fairly v. Thompson, 34 Miss. 101 (1957); Road Material and Equipment Co., Inc. v. McGowan, 229 Miss. 611, 91 So. 2d 554 (1956); Rockett v. Finley, 183 Miss. 308, 184 So. 78 (1938); Horne v. Moorehead, 169 Miss. 362, 153 So. 668 (1934); Person & Marye v. Nevitt, 32 Miss. 180 (Miss. 1856); Humphries v. Bartee, 10 S & M 282 (1848); Ross v. Lane, 3 S & M 695 (Miss. 1844); Hurd & Wife v. Smith, 5 How. 562 (Miss. 1841); Niles v. Anderson, 5 How. 365 (Miss. 1841).

The textwriter in 49 C. J. S. *Judgment* § 269 at 486 (1947) says that "The fact that a judgment was obtained through fraud or collusion is universally held to constitute a sufficient reason for opening or vacating such judgment either during or after the term at which it was rendered. In some jurisdictions statutes confer power on the courts to vacate judgments on the ground of fraud and to regulate its exercise, although generally courts of record possess an inherent common-law power in this behalf, which is not dependent on legislation." This rule has been generally accepted. See Annot. 139 A. L. R. 436 III a. (1942).

■■■ The question for determination here is whether or not the evidence was sufficient to establish fraud on the part of the appellant in procuring the decree at the time it was entered.

The decree of June 7, 1963, was a consent decree, whereby the parties agreed to dismiss the proceedings in the chancery court. Judge Griffith in his work on Mississippi Chancery Practice § 618 points out that: ''Such a consent possesses the attributes of a contract and, when duly authenticated and especially after being filed, it is binding on the consenting parties, if competent to contract, and cannot be set aside or reviewed, except on a clear showing that it was obtained by fraud, or the substantial equivalent thereof, or was based on mutual mistake.'' See also 30A Am. Jur. *Judgments* § 638 (1940).

It is also pointed out by the textwriter in 19 Am. Jur. *Equity* § 427 (1939), at p. 294: ''It is a general rule that a bill of review will not lie against a decree entered by mutual consent of the parties, unless there was fraud in obtaining it.'' See also 19 Am. Jur. *Equity* § 407 (1939).

■■ ■ In order to vacate a judgment on the ground that it was fraudulently procured, the fraud must be clearly shown, and the evidence must be clear and convincing. A mere preponderance of the evidence from which an inference of fraud may be established is not sufficient to set aside a solemn judgment or decree of a court of general jurisdiction. 49 C.J.S. *Judgments* § 297 (1947).

■■ ■ The general rule is well-settled that fraud will not be presumed but must be affirmatively proven. (37 C. J. S. *Fraud* § 94, 1943). This Court said in Otts Finance Company v. Myers, 169 Miss. 407, 152 So. 834 (1934): ''There is no sounder doctrine of law established in our courts than that he who alleges fraud must state the facts upon which the fraud is based, and

prove them." See also Childs v. Hall, 128 Miss. 111, 90 So. 626 (1922). Moreover, the rule imposing the burden of proof upon one alleging fraud rests upon the fact that fraud is regarded as criminal in its essence and involves moral turpitude. (37 C. J. S. *Fraud* § 94, 1943). It has long been the rule in this State that where a party charges fraud, he must prove it by evidence which is clear and convincing." Grenada Auto Co. v. Waldrop, 188 Miss. 468, 195 So. 491 (1940); New York Life Ins. Co. v. Gill, 182 Miss. 815, 182 So. 109 (1938); Dowling v. White Lbr. & Supply Co., 170 Miss. 267, 154 So. 703 (1934); Metropolitan Life Ins. Co. v. Hall, 152 Miss. 413, 118 So. 826 (1928). On the other hand, the presumption is that all men are honest and will deal fairly and honestly. Robinson v. McShane, 163 Miss. 626, 140 So. 725 (1932); Orgill Bros. v. Perry, 157 Miss. 543, 128 So. 755 (1930); 31A C. J. S. *Evidence* § 126 (1964). Unless the testimony introduced by the party alleging fraud is sufficient to overcome the natural presumption of fair dealing and honesty, a court of equity will not be justified on opening a former decree or judgment after the term of court at which it was rendered, and setting it aside upon the ground of fraud.

Ordinarily, this Court is reluctant to reverse a decree of the chancery court rendered upon conflicting evidence (Griffith's Mississippi Chancery Practice 2nd Ed. § 674, 1950). The Supreme Court, however, is not bound by a decree of the chancery court on conflicting evidence, and where a decree is based upon a charge of fraud and the evidence is not sufficiently clear and convincing to establish fraud this Court will reverse such decree. Osborn v. Thomas, 74 So. 2d 757, 221 Miss. 682 (1954); Eastman Gardner & Co., 95 Miss. 651, 48 So. 615 (1909); Grenada Auto Co. v. Waldrop, *supra*.

We are of the opinion that the charges and counter-charges made by the parties to this litigation,

do not arise to that degree of clear and convincing evidence necessary to establish fraud upon the chancery court so as to show the decree of June 7, 1963, was void. Therefore, for that reason, we are of the opinion that the last decree of the chancery court must be reversed.

■ ■ Mrs. Taft has set out several assignments of alleged error on cross-appeal. In view of our decision on direct appeal, we deem it unnecessary to discuss the cross-assignments of error, except the suggestion that the court erred in not permitting the introduction. of testimony to show that Mr. Taft had said he intended to get a divorce and marry again.

We do not believe the rejection of the tender of testimony of Phillip Maia and Mrs. Ethel Maia is of sufficient probative value to require a retrial of the issue of fraud, because at most the testimony was cumulative to add to the intent shown in the suit wherein appellant sought a divorce. Moreover, the fact that he stated he intended to marry again, if true, is immaterial, because thereafter he dismissed his divorce suit. The testimony therefore could only raise a weak inference of intent prior to the decree of reconciliation.

We hold therefore that the final decree of November 29, 1963, shown to be recorded in Minute Book 151 at pp. 438-439 should be, and is, hereby opened, vacated and set aside, and the consent decree of June 7, 1963, is hereby reinstated wherein all proceedings were dismissed between the parties. Appellant will be required to pay all costs of appeal.

Reversed and judgment rendered here reinstating former decree.

*Lee, C. J., and Ethridge, Jones and Patterson, JJ.,* concur.