SENTER *et al. v.* PROPST.

(Division B.   June 10, 1940.)

[197 So. 100.   No. 34176.]

**Hannah, Simrall & Foote**, of Hattiesburg, for appellant, American Oil Company.

192

Arthur T. Cleveland, of Fulton, for appellant, J. T. Senter.

C. R. Bolton, of Tupelo, and I. L. Sheffield, of Fulton, for appellee.

198

Argued orally by **T. C. Hannah,** for appellant, and by **C. R. Bolton,** for appellee.

**McGowen, J.,** delivered the opinion of the court.

Propst filed his bill in equity in which he prayed to be relieved of a claim of forfeiture asserted by appellants for nonpayment of rent, which was due by Propst and in

default, and he asserted that in equity he was entitled to tender the amount of rent in default and be re-instated to possession of the leased premises, and that his contract with the American Oil Company be enforced as to rent due by it to him. He alleged that his ejection as tenant was procured by fraud and collusion between the American Oil Company, subtenant, and J. T. Senter, landlord, and he generally prayed for a restoration of the status quo before the eviction.

The appellants, the American Oil Company and Senter, by their answer, denied the charge of fraud, denied that the American Oil Company was a subtenant of Propst, but alleged that the American Oil Company was the assignee of all the right and title which had been invested in Propst by his contract with Senter. A lease contract from Senter to Propst was exhibited in the pleadings and offered in evidence; likewise a contract between Propst and the American Oil Company was also exhibited and offered in evidence.

The Reporter will set out these contracts in full in stating the case.[1]

The court below decreed that Propst, the complainant there, was entitled to full relief, set aside the eviction as fraudulent, and entered a money decree for rent in arrears against the American Oil Company and issued an injunction to enforce the decree.

On the 13th day of February, 1931, S. N. Propst entered into a lease contract with J. T. Senter by the terms of which he leased from Senter certain real property in the Town of Fulton. This land was an unimproved lot upon which appellee, Propst, erected a filling station building and put thereon necessary instrumentalities with which to operate a filling station. By its terms this lease was to begin on April 1st, 1931, and continue for a term of ten years thereafter, for which Propst was to pay Senter $60 per year. At the time of the execution of the lease, it was

---

[1]The contracts referred to are printed at the end of the opinion.

arranged between Propst, Senter and the Tupelo Bank at Fulton that the annual rental was to be paid to the Tupelo Bank on an indebtedness owed it by Senter, and the bank agreed that in case of foreclosure on Senter's property of which the land included in this lease was a part, that Propst would be protected by the bank in his possession thereof. Propst paid the first year's rental of $60 on April 1st, 1931, and after that date until October 5, 1937, he never paid to the bank or to Senter any further rent. On that day Senter declared a forfeiture of the lease because of the failure of Propst to pay the rent and acquired possession by a demand upon Cunningham, the agent of the American Oil Company, which was cheerfully granted by Cunningham to Senter. Cunningham examined the contract of Dr. Senter and yielded the possession of the premises to him. Within the week Cunningham assisted Senter in re-letting the property to another by written lease for a term of one year and a rental of $25 per month. Cunningham procured this contract to be written by his lawyer in Tupelo and carried it back to Fulton and the proposed tenant in the execution of the contract.

Propst conducted a filling station business on the property until the 11th day of May, 1934, when he entered into a contract with the American Oil Company by which he put the latter in possession of the Fulton premises for a minimum rental of $100 per month, and an excess of that amount in the event the sales of gasoline and oil warranted additional payments at a specific rate per gallon. The American Oil Company promptly paid to Propst the minimum rental of $100 per month up to and including October 1, 1937. Propst at the time of the alleged eviction was a citizen of Collman, Alabama, though he had filling stations in Mississippi, and Dr. Senter testified that he was at all times solvent.

No demand was ever made on Propst by Senter or the bank for the payment of the rent. No forfeiture was ever declared on any of the due dates of the lease contract. existing between Propst and Senter by anyone, and Propst

did not know that the American Oil Company had yielded up peaceable possession of the premises until about the 12th or 13th of October when the American Oil Company ratified the action of its agent Cunningham and notified him that they had been evicted from possession by Senter and considered their lease contract terminated, and enclosed to Propst a check for the few days' rental due in October. Senter likewise notified Propst about the same date that he had declared a forfeiture. When Propst received these notices he promptly went to Fulton, within a few hours, and demanded that Senter re-instate him in possession of the premises, and finally he and his attorney went to the bank and tendered the amount of rent in arrears, with interest thereon properly calculated. The bank, on the instruction of Senter, declined to receive this tender of the rent. Senter waived a tender by declining to put Propst in possession of the leased premises.

The circumstances of the surrender are important and material. For some months the filling station at Fulton had not been open and operated by the American Oil Company. The chancellor was warranted in finding that the American Oil Company desired to be released from its obligation to pay Propst $100 per month. On the 5th day of October, Cunningham, the agent of the American Oil Company, went to the filling station in Fulton, opened it up, and was sweeping out when Dr. Senter, seeing him there, went to the station, asked Cunningham what he was doing, to which he replied that he thought they might reopen and begin operations or maybe sublease to someone else. Thereupon Senter told him that the rent had not been paid for six years, and, under the terms of the lease contract between him, Senter, and Propst, he was entitled to declare a forfeiture of the lease and take possession of the premises on account of the non-payment of rent by Propst. Cunningham examined the lease contract between Propst and Senter, surrendered the premises without any request for them to notify his principal or to notify Propst.

After the surrender in this fashion to Senter of the premises, and after Senter had procured another tenant, the American Oil Company then notified Propst for the first time. Likewise, Senter notified him for the first time that he had been evicted from the premises. The evidence shows that in the improvement of the land in controversy the appellee had expended in excess of $1,300, erected a building, graded the property, and otherwise made it fit for use as a filling station. It was provided in the lease contract between Propst and Senter that the buildings placed thereon should become a part of the real estate and at the expiration of Propst's lease title that the buildings should vest with the real property in Senter, the landlord.

The clause of the contract upon which Senter based his claim of right of forfeiture is as follows: "Default in payment of rentals by second party or his assigns for a term of 30 days shall entitle the first party or assigns to repossess the said property and deal therewith as they may see proper." There was another significant clause in the original lease contract between Propst and his landlord, which recited that at any time after the expiration of one year Propst was entitled to cancel the lease contract upon thirty days' notice to Senter.

In the second contract between Propst and the American Oil Company the fact of Propst's lease from Senter was set out and the fact that Propst was entitled to terminate the lease at any time by giving thirty days' notice of such intention, and a provision was specifically set forth therein that this right to terminate the contract remained in Propst. The American Oil Company agreed to keep the buildings in repair, subject to wear and tear, agreed to paint the buildings and in case of fire to restore the buildings, and Propst agreed to pay the taxes and at his own cost protect the American Oil Company in possession of the premises. The $100 per month is spoken of as rental throughout the contract, and during the term the premises were occupied by the Oil Company it at-

torned to Propst. It never, in any manner, recognized Senter as its landlord until the day of the alleged eviction. And the contract provided that Propst was to make good any interruption in the Oil Company's use of the premises and any expense they incurred in protecting their possession was to be paid by Propst.

It is the contention of the appellants that Section 4(b) of the contract between Propst and the American Oil Company constituted the instrument an assignment. In other words, they are forced to take the untenable position that the entire contract constituted the lease of the personal property, such as tanks and trucks and the like, and the complete assignment of the title which Propst had by virtue of his lease with Senter. In other words, it is the contention that under this contract the American Oil Company was paying Senter $100 per month for $500 worth of fixtures, such as are commonly used in filling stations, and that the lease part of the contract applied to those fixtures and had no application to the real property and buildings thereon.

(1) We are of opinion, looking at the entire American Oil Company contract, that it constituted a sublease by Propst to the Oil Company and was not an assignment, notwithstanding the very technical language used in the section to which we have referred. That section alone would constitute the contract one of assignment, but read altogether it cannot be fairly said it was other than a sublease by Propst. See 35 C. J., page 991. We think that the entire instrument shows that Propst had a very substantial reversionary interest in the leased premises. He had a right to terminate the contract on his own volition which was clearly retained by him in his lease contract with the American Oil Company. There was a manifest intention in this case to sublet the premises with a right of re-entry on non-payment of rent, and he assumed a continuing liability to Senter under his original lease. In this case, however, we do not think there will be any

difficulty in applying the principles of equity to the facts of this case.

(2) It is insisted that the chancellor was not authorized to find on these facts, which we have detailed, that Senter and the American Oil Company committed a fraud in the surrender of the possession of the property. Look at the facts: The American Oil Company was paying to Propst $100 per month for this filling station property which was closed and not being operated. They had indicated that they intended to avail themselves of the right to cancel the lease if the highway commission took three feet of the ground. Their agent declared in his letter to the principal that the company desired to be rid of this property. It is perfectly apparent that the American Oil Company desired to be rid of the contract, and did greatly profit. Senter likewise was receiving only $5 a month. By ousting Propst in this manner—under this agreement with the American Oil Company, without his knowledge and consent, and after six years of waiver of the right to declare a forfeiture—he receives $25 a month or $300 per annum instead of $60. Not only that, but if this eviction was not a fraud he acquired the buildings which had been erected on the leased premises. The eviction was accompanied by the sub-tenant surrendering to Senter to whom he was a stranger the possession to the premises without even attempting to defend or to give Propst an opportunity to demand his right to continue in possession, and further, Cunningham, in order to make sure that his company was out of possession, paid the expense of preparing a lease contract between Senter and another, and assisted in the consummation of that contract. This is a legal fraud that cannot be tolerated. It amounted to no eviction so far as Propst was concerned, and was an arrangement between Senter and the American Oil Company by which each of them profited, and it was no small profit when the character of the business is taken into consideration.

(3) It is quite well settled by authorities that in equity a forfeiture clause such as is embraced in the contract between Propst and Senter will be relieved against in favor of the lessee when undertaken to be enforced by the lessor upon the payment of the rent in arrearage with interest thereon.

The rule is thus stated in Pomeroy, 1 Eq., Jur. (4 Ed.), sec. 453: "Where the lease contains a condition that the lessor may re-enter and put an end to the lessee's estate, or even that the lease shall be void, upon the lessee's failure to pay rent at the time specified, it is well settled that a court of equity will relieve the lessee and set aside the forfeiture incurred by his breach of the condition whether the lessor has or has not entered and dispossessed the tenant. This rule is based upon the notion that such condition and forfeiture are intended merely as a security for the payment of money."

The same rule is substantially thus stated in 16 R. C. L., p. 1146, sec. 665.

In Sheets v. Selden, 7 Wall. 416, 421, 19 L. Ed. 166, the Supreme Court of the United States said on this subject: "The grounds upon which a court of equity proceeds are, that the rent is the object of the parties, and the forfeiture only an incident intended to secure its payment; that the measure of damages is fixed and certain, and that when the principal and interest are paid the compensation is complete."

In the case of Kann v. King, 204 U. S. 43, 27 S. Ct. 213, 216, 51 L. Ed. 360, 363, the Supreme Court of the United States said: "That a court of equity, even in the absence of special circumstances of fraud, accident, or mistake, may relieve against a forfeiture incurred by the breach of a covenant to pay rent, on the payment or tender of all arrears of rent and interest by a defaulting lessee, is elementary."

As we have said counsel stands upon his lease contract and the right of forfeiture therein granted to Senter in the language we have quoted and cites 35 C. J., Landlord

and Tenant, p. 1068, sec. 239. It will be noted that this quotation applies in cases where a forfeiture has been accomplished in the manner provided by law, for instance, there was no attempt at forfeiture by Senter on the due date of the rent, April 1, 1937, nor on any of the preceding due dates so that on this technical proposition he does not bring himself within the terms of the law cited by him, but further Senter had permitted Propst to enter into another year several months before. He undertook to enforce a forfeiture without any kind of notice to Propst, which we think was necessary on the facts of this case.

Counsel for appellants say that the quotation, which is too lengthy to set forth in this opinion, is the law, and equity follows the law. Counsel misconceives the effect of this well-recognized maxim of equity. The rule is that equity follows the law as far as the law goes in securing the rights of the parties and no further. When the law stops short of securing this object, equity continues the remedy until complete justice is done. 21 C. J. 195. It might be, as to which we express no opinion, that in an ejectment suit the principle of equity which we have approved in this case and adopted for this state could not be invoked or that it could not be invoked in an unlawful entry and detainer. By this action Senter and the Oil Company profited greatly, and if equity did not interpose in this case a very great injury would be inflicted upon Propst. The latter lost $100 per month and his buildings.

We might add further that there was a complete waiver by Senter of his right of forfeiture in this contract by six years' silence, neither he nor the bank who represented him ever once requested the payment of the small rental comparatively on which this default or forfeiture was declared, without notice to the injured party. We approve the decree rendered in this case.

We have carefully examined the cases of Clark v. Service Auto Co., 143 Miss. 602, 108 So. 704, 49 A. L. R. 511;

Winston v. Franklin Academy, 28 Miss. 118, 61 Am. Dec. 540; and Moring v. Ables, 62 Miss. 263, 52 Am. Rep. 186. All of these are actions at law in which the tenant voluntarily surrendered possession to the landlord or in which the demand had been made for payment of the past-due rent and refused by the tenant. We think the case of Clark v. Service Auto Company, supra, fully sustains the conclusion reached in the case at bar in that it holds that this court would not tolerate a landlord obtaining possession by a trespass. In this case it was obtained by fraud. There can be no difference between trespass and fraud as to the application of the equitable principle announced herein.

Affirmed.

### Exhibit A.

"This lease and contract made and entered into on this the 13th day of February, 1931, by and between Dr. J. T. Senter, of Fulton, Mississippi, hereinafter called party of the first part, and S. N. Propst, Fulton, Mississippi, hereinafter called party of the second part, Witnesseth:

"The said party of the first part hereby lets to lease and leases to second party or his assigns for a term of 10 years from April 1, 1931, unless second party or his assigns should exercise the option herein contained to shorten same, that certain tract or parcel of land for the purpose of a gasoline and oil station for retail and wholesale purposes together with the necessary driveways, etc., in and out, the said property being described as follows, to-wit:

"Beginning on the south boundary line of Bllck No. 7 in the Inside Donation of the Town of Fulton, Miss., 165 feet west on the S. E. corner of said block, thence east along the south boundary line of said bloack and along north side of Main street or the Bankhead Highway a distance of 75 feet, or to the S. W. corner of the drug store now operated by J. T. Senter Drug Store, thence

north 50 feet, thence west 75 feet, thence south 50 feet to the point of beginning, all of said land lying and being in Itawamba County, Mississippi.

but it is understood and agreed that no tank or building shall be erected within 20 feet of the east boundary line of said tract of land.

"For and in consideration of said lease second party agrees and promises to pay to first party or assigns the sum of $60 per year as a rental of said property, same to be paid on April the first day of each year as long as this lease shall be effective, but it is understood that second party shall have the right to terminate said lease at any time after one year from the effective date of same, or one year from April 1, 1931, by giving 30 days written notice of his intention so to do. It is also agreed and understood that second party shall have the right to remove at the termination of this lease all personal, or mixed property, all fixtures thereon, and shall have 30 days in which to remove same, but that buildings placed on said land shall be considered as a part of the real estate and at the expiration of said lease title to such shall pass to first party or his assigns. It is understood that said lease shall be effective for a term of 10 years upon payment by second party or assigns of the said annual rental of $60 per year and until terminated by second party or his assigns.

"It is understood that the Bank of Tupelo has a trust deed on this and other property owned by first party and that said bank, in consideration of the rentals as above set out being paid on the debt due said bank, has agreed to the terms and conditions of said lease and have agreed that in case of foreclosure of the said trust deed that the tract of land herein described will be conveyed without disturbing the said lease or any of its conditions and with the rentals which may fall due thereafter being paid to the purchaser of said tract of land; that therefore in consideration of the said lease and the payments of rentals to be credited on the debt due said bank by first

party, the said bank has in a separate instrument consented to the said lease.

"Default in payment of rentals by second party or his assigns for a term of 30 days shall entitle the first party or assigns to repossess the said property and deal therewith as they may see proper.

"In witness whereof we have hereunto set our hands on this the 13th day of February, 1931.

"J. T. Senter
"S. N. Propst"

Exhibit B.

"This contract made and entered into on this the 11th day of May, A. D., 1934, by S. N. Propst, hereinafter, for convenience, referred to as the party of the first part, and the American Oil Company, an Ohio Corporation, hereinafter, for convenience, referred to as the party of the second part.

"Witnesseth:

"1. The party of the first part now has a gasoline filling station located in the City of Tupelo, Lee County, Mississippi, on that certain property described as follows, to-wit:

"One Lot fronting on the South Side of East Main Street approximately 48 feet wide, more or less, situated between the lot owned by Sam H. Long and the lot owned by W. C. Carter, and extending South to the spur or side track of the Frisco Railroad which runs approximately parallel with East Main Street, and on the South Side thereof, said lot having been leased to W. C. Carter during the year 1932.

"The property is held by the said party of the first part under a written lease contract existing between the said party of the first part and W. E. Martin which lease bears date of November 15, 1932, and expires on December 31, 1935.

"2. The said party of the first part also has a gasoline business located at Fulton, in Itawamba County, Mississippi, consisting of certain large storage tanks, as well as

other gasoline equipment in the way of pumps, lubricating oil tanks, et cetera, the same being located on that certain property described as follows:

"Beginning on the South boundary line of Block 7 in the Inside Donation of the Town of Fulton, Mississippi, 165 feet West of the Southeast corner of said Block, thence East along the South boundary line of said Block and along North side of Main Street, or the Bankhead Highway a distance of 75 feet, or to the Southwest corner of the drug store now operated by J. T. Senter Drug Store, thence North 50 feet, thence West 75 feet, thence South 50 feet to the point of beginning, all of said land lying and being in Itawamba County, Mississippi, but it is understood and agreed that no tank or building shall be erected within 20 feet of the East boundary line of said tract of land.

"The party of the first part is in possession of the above described property by virtue of a written lease existing between the said party of the first part and J. T. Senter, which bears date of February 13, 1931, and expires on April 1, 1941, subject however, to the right of the lessee (S. N. Propst) to terminate the said lease at any time by giving thirty (30) days' notice of his intention so to do.

"3. The party of the second part is engaged in the sale and distribution of gasoline, motor fuels, lubricating oils, et cetera, and has this day agreed and contracted with the party of the first part for the acquiring of the unexpired lease-hold rights of the said party of the first part in and to the above described property.

"4. It is, therefore, covenanted and agreed between the party of the first part and the party of the second part, as follows, to-wit:

"(a). The party of the first part does hereby transfer, assign, set over and deliver unto the party of the second part all of the right, title and interest of the said party of the first part existing under any by virtue of the above described lease between W. E. Martin and the party of the first part, save and except that the party of the second

part does not transfer any rights held by him under paragraph 7 of said lease with reference to a renewal of continuation of the same by W. E. Martin.

"(b). The party of the first part does hereby transfer, assign, set over and deliver unto the party of the second part all right, title and interest held and possessed by the said party of the first part under and by virtue of the lease agreement existing between the said party of the first part and J. T. Senter, of date February 13, 1931, hereinbefore referred to.

"(c). The party of the first part also hereby leases to the party of the second part any and all tanks, pumps, grease racks and/or other filling station equipment now located upon the aforesaid premises, including one automobile truck tank and any other delivery eqipment, and also any and all office furniture, fixtures and equipment now or heretofore used in and about the operation of the petroleum business that is being conducted on either or both of said pieces of property, including such machines as are useful and bieng used in and about the making and keeping or records. Provided, however, that it is distinctly agreed tand understood that there is a 12,000 gallon gasoline storage tank on the property in Tupelo, Mississippi, which the party of the first part is hereby given the right to remove from said premises; and further provided that the party of the first part shall have the right to remove from the premises covered by this contract any and all adding machines, typewriters, et certera, that are not being used in connection with the conduct of the petroleum business at 'either of said locations.

"(d). The rental which the party of the second part is to pay the party of the first part for the aforesaid premises is as follows:

"2 cents per gallon on all gasoline sold and distributed through the said stations.

"1¾ cents per gallon on all kerosene sold and distributed through said stations.

"12 cents per gallon on all lubricating oils sold and distributed through said stations.

"it being understood that this said commission on lubricating oil applies only to the retail sales or sales in quantities of one gallon or less; but on sales of lubricating oil classed as "wholesale" transactions, that is, sales of more than one gallon, the party of the first part is not to receive any commission.

"It is contemplated that the rentals accruing to the party of the first part on the above basis will amount to as much as $200.00 per month while the lease of both of said properties continues in effect, but the party of the second part guarantees to the party of the first part that he will receive monthly rentals equal to $200.00 per month for said premises during said period even though the amount of rentals on the aforesaid basis do not equal said sum. In other words, if the amount of rentals computed on the basis aforesaid does not equal the sum of $200.00 per month while the two said lease contracts are in effect, then the party of the second part will make up to the party of the first part any deficit, so that the amount of monthly rental received by the party of the first part will, at least, equal the sum of $200.00 per month. When the lease on the property at Tupelo, Mississippi, expires by limitation and is no longer in effect, this guarantee will be reduced to the sum of $100.00 per month and will continue in operation and effect so long as the station at Fulton, Mississippi, continues under this lease agreement.

"(e). The amount of rental is to be ascertained as promptly after the close of business of each and every calendar month as is practicable and shall be paid by the party of the second part to the party of the first part on or before the 10th day of each and every month.

"(f). Should the party of the second part default in the payment of said rentals as and when due and said default continue in effect for thirty days after the giving of written notice, said notice to be sent by registered

mail to the party of the second part to Hattiesburg, Mississippi, notice of said default to be given by the party of the first part, this shall render said contract inoperative and void and confer upon the party of the first part the right to immediately take possession of the properties herein described; or the said first party may elect to declare the entire rent due hereunder immediately due and payable and porceed to collect the same.

"(g). It is agreed and understood between the parties hereto that the party of the first part is to pay the ad calorem taxes on the properties hereinbefore described or is to be responsible therefor; but that the party of the second part is to pay all privilege taxes and excise taxes that accrue by reason of the use of said properties for gasoline and/or filling station purposes.

"(h). The party of the second part is to be responsible for keeping the buildings or equipment on said property in good tenable and usable condition, and in the event of the damage to or destruction of the said premises by fire or tornado, the said party of the second part shall repair or restore the same so that the said premises may be usable for gasoline purposes.

"(i). It is further distinctly agreed and understood that the party of the second part is to keep and maintain all of said property in as good condition as when received from the party of the first part, subject only to the natural wear and tear in the use of said property and the normal depreciation or obsolescence that accompanies the use of the said property for the purpose for which they are leased. It is expressly agreed that the party of the second part shall keep the buildings and equipment properly painted so that they will not unnecessarily depreciate or deteriorate on account of any failure in this respect.

"(j). The party of the first part warrants the title and possession of the said properties to the extent that the possession of the party of the second part shall not be disturbed. The party of the first part is obligated and bound to pay the rentals due under the lease contracts

under which he holds said premises, and to pay the same to the proper parties so that the possession of the party of the second part will not be jeopardized on account of any default; and the party of the first part shall also be obligated and bound to protect the possession of the party of the second part to the extent that the said premises may be continuously occupied and used by the party of the second part without interruption. Should the party of the first part fail to so protect the title and possession of the said property, and the said party of the second part be interrupted in the use of said premises, then, and in the event, the said party of the second part shall not be obligated or bound to pay to the party of the first part the rentals herein provided for during said interruption. The parties hereto recognize that in the lease now existing between J. T. Senter and S. N. Propst, that S. N. Propst has the right to terminate said lease at any time upon thirty days written notice and if the said S. N. Propst should elect to exercise this option, he shall at the same time he gives to J. T. Senter, give notice to the party of the second part, whereupon the said part of the second part is hereby given the right to elect to make payments due by the said S. N. Propst and thereby continue said lease contract in effect with the said J. T. Senter. On the other hand, however, the party of the second part may, in such event, also elect to permit the said S. N. Propst to cancel said lease contract in accordance with his desires and in which event the said party of the second part will not be further obligated or bound to pay to the said party of the first part any rental whatever on account of said property, but the guaranteed monthly rental will thereupon be reduced in the amount of $100.00 per month. In other words, the guaranteed rental of $200.00 per month is based on the operation of the two stations, one at Tupelo, and the other at Fulton, Mississippi, and in the event either of said stations is discontinued, the monthly guarantee will be reduced by the amount of $100.00.

"(k). The party of the second part is accepting this lease, including the title and possession of the party of the first part, without any investigation into the state of the title, but upon the covenant of the party of the first part as to the legality of said title and possession. It is, therefore, distinctly agreed and understood between the parties hereto that if the party of the second part filnds it necessary to pay out and expend any sum as attorney's fees, or incurs any expense in protecting the possession of the said party of the second part against any adverse claims to said property, that the party of the first part will refund such attorney's fees or other expenses to the party of the second, to the end that the said party of the second part will not sustain any expense or loss on said account.

"(l). It is further agreed and understood between the parties hereto that the equipment that is now on the aforesaid premises, which the party of the first part is given the right to remove from said premises at the expiration of said lease, may be removed by the said party of the first part in accordance with the terms of said leases, and said equipment is not to be removed by the party of the second part. It is further agreed and understood that any and all equipment that may be placed upon said premises by the said party of the second part during the life of this contract will, at the expiration of the term of this lease as herein provided, become the property of the said party of the first part and the party of the second part shall not have the right to remove the same.

"(m). It is further distinctly agreed and understood that the party of the first part is to guarantee to the party of the second part the prompt and punctual payment of any and all accounts for gasoline, motor fuels, lubricating oils, et cetera, that may be sold on credit by the parties operating the filling stations on the above described premises.

"(n) The party of the first part obligates and binds himself not to engage directly or indirectly, nor as the

stockholder in a coporation, in the sale and distribution of gasoline, motor fuels, motor lubricants, et cetera, at Tupelo and Fulton, Mississippi, during the life of the lease herein-before referred to. That is, he will not engage in said business at Tupelo, Mississippi, prior to the expiration of the lease existing between W. E. Martin and the party of the first part, and will not engage in said business at Fulton, Mississippi, prior to the expiration of the terms of the lease existing between the party of the first part and J. T. Senter.

''5. This contract is made and signed on the 11th day of May, A. D. 1934, but it is distinctly agreed and understood by and between the parties that it is to become operative as to delivery of properties hereunder on June 1, 1934, and that it will terminate as to each of said properties upon the ecpiration or cancellation of the leases hereinbefore referred to.

''Witness our signatures in duplicate on this the 11th day of May, A. D. 1934.

''S. N. Propst (Signed)
''Party of the First Part
''American Oil Company
''By R. W. Dunn (Signed)
''Party of the Second Part''