OSBORN, et al. *v.* THOMAS, et ux.

No. 39271          October 4, 1954          74 So. 2d 757

*Alexander & Alexander,* Jackson, for appellants.

*Hall & Callender,* Columbia; *Breed O. Mounger,* Tyler-town, for appellees.

GILLESPIE, J.

The chancellor found that a mineral deed purportedly executed by M. J. Thomas and wife, Rosetta Thomas, to Ed W. Dawson was a forgery, and that neither signed it; and the deed was cancelled. This deed was dated January 15, 1940, and purported to convey one-half of the minerals under the 120 acre homestead belonging to M. J. Thomas. Appellants are the grantees of Dawson. The deed purports to have been witnessed by L. F. McGee and Melton McGee, and was proven by the affidavit of L. F. McGee and admitted to record on January 23, 1940. L. F. McGee died before trial in the lower court. Melton McGee was subpoenaed by both parties, but failed to appear at the trial.

Appellees executed an oil, gas and mineral lease to Homer P. Lee, dated February 21, 1939, involving the same land, and this lease was assigned to Texas Pacific Coal and Oil Company. This lease was for a primary term of ten years and provided for annual delay rentals of $12. The lease is not involved in this suit and appears never to have been questioned.

Appellant urges that the chancellor erred in holding that the signatures of M. J. Thomas and Rosetta Thomas were forged. The question is whether the chancellor's finding was manifestly wrong.

Appellee M. J. Thomas testified that he did not know Ed W. Dawson; that he talked to L. F. McGee about leasing his land; that he owned only one tract of land, the one here involved; that he told McGee his land was already under lease; that McGee told him that it made no difference that his land was already under lease and offered Thomas $30 for a lease with annual delay rentals of 50¢ per acre; that he leased his land to McGee and was paid the $30 with a check; that McGee told him it was not necessary for Thomas' wife to sign the lease. Thomas further testified that he never signed a mineral deed for anyone; that he did not sign his wife's name to any min-

eral deed; that he knew the difference between a mineral deed and a lease when he saw one; that he could read and write and sign his name. Thomas testified that he and his wife, Rosetta Thomas, signed the lease that was assigned to the Texas Pacific Coal and Oil Company. When questioned on cross-examination concerning the delay rentals on the Texas Pacific lease, Thomas testified that he was to get $12 per year delay rentals and these rentals were split in half about 1945, and when the first $6 check came, he mailed it back and did not cash any of the $6 checks. Counsel for appellant then questioned Thomas about seven cancelled delay rental checks issued by the Texas Pacific Coal and Oil Company of Ft. Worth, Texas, the first check being dated January 21, 1941, and the others each January thereafter until 1948, except that the one for the year 1945 does not appear in the record. These checks were introduced in evidence and each was made payable to M. J. Thomas and wife, Rosetta Thomas, and each check bears the purported endorsement of M. J. Thomas and Rosetta Thomas, together with the stamp of the Bank of Tylertown, Mississippi, guaranteeing the signatures of the payees; and each of these checks were for the sum of $6 in payment of delay rentals under the lease held by Texas Pacific Coal and Oil Company.

Thomas' testimony is confusing and contradictory; and as to several of the rental checks, he testified first that he did not sign, and later, that he did sign. He admitted that he signed four of them and that his wife signed one. M. J. Thomas was also questioned about a form entitled "statement of title and possession" which was introduced in evidence bearing the purported signatures of M. J. Thomas and Rosetta Thomas, and which bore the same date as the mineral deed in question. This statement contained a history of the title and possession of the lands involved and considerable information about Thomas' family and his homestead status. M. J. Thomas

admitted his signature was on the document but denied that he placed it there, concluding that there was "nothing to it" and "I don't know nothing about it."

Mrs. Rosetta Thomas, one of the appellees, testified that she never saw Ed W. Dawson nor L. F. McGee, and never had any transaction about any mineral deed; that she never authorized anyone to sign her name to anything and that she could write and sign her own name; that she knew nothing about any transaction with L. F. McGee or Ed W. Dawson, except that her husband told her he had leased his land to McGee for $30; that she got no part of that money. Mrs. Rosetta Thomas testified that she remembered the $6 rental checks on the Texas Pacific Coal and Oil Company lease being received but that she did not cash any of them, but mailed them back; that she sent one back three times.

George J. Lacy, an examiner of questioned documents, testified for appellants. He was shown to be qualified by education and experience as an expert. Lacy testified that he has a complete library and laboratory for use in his profession. He testified that he had examined the seven delay rental checks above referred to, the original lease that was assigned to Texas Pacific, the purported mineral deed from appellees to Dawson, and the statement of title and possession, and that in his opinion the M. J. Thomas signature and the Rosetta Thomas signature appearing on the mineral deed were written by the same persons, respectively, that wrote the signatures on the nine other instruments, except two of the Rosetta Thomas signatures appearing on the checks which, in his opinion, were written by M. J. Thomas, and except the M. J. Thomas signature on one of the checks, which, in his opinion, was written by Rosetta Thomas. A large number of photographs of the signatures, and parts of the signatures, of M. J. Thomas and Rosetta Thomas, greatly enlarged, were introduced and used by Lacy in explaining his conclusions.

We have before us in photostatic form the various signatures appearing on the lease dated February 21, 1939, the statement of title and possession, the mineral deed, and the seven delay rental checks. These we carefully examined and compared.

Ed W. Dawson testified that he employed L. F. McGee and Melton McGee to buy minerals for him and that they handled the transaction of purchasing the minerals from appellees; that Thomas and his wife were paid with a draft for $30, drawn and endorsed by M. J. Thomas and Rosetta Thomas, which was presented to the Bank of Tylertown and paid from the personal funds of Dawson in a Jackson, Mississippi bank.

It is a familiar rule that where there is evidence to support the chancellor's finding of fact, it will not be disturbed on appeal unless manifestly wrong.

There is a presumption against fraud, dishonesty, and bad motive, and evidence to overcome this presumption must be something more than a mere preponderance; it must be clear and convincing. Griffith's Chancery Practice, Par. 589.

When viewed in the light of common sense, common knowledge, and common understanding, the testimony of both the appellees is inherently weak and is neither clear nor convincing. Moreover, there are strong circumstances tending to prove the validity of the deed, supported by the testimony of Lacy, the handwriting expert. According to the testimony of appellees, there were fourteen forgeries committed, involving nine documents on eight separate dates. Both of the appellees testified that all of the rental checks for $6 were mailed back, but all show that they cleared the bank bearing the purported endorsement of appellees. Thomas admitted that he endorsed some of these checks. The statement of title and possession contains considerable information about the family and lands of M. J. Thomas that could hardly have been supplied by strangers.

Both parties cite the case of Lee, et al. v. Duncan, et al., 70 So. 2d 615. In that case we reversed the chancellor and held that the conclusion was inescapable that Duncan signed the deed there in question. We think the evidence in the case before us that M. J. Thomas signed the deed is stronger than the evidence that Duncan signed the deed in Lee v. Duncan, supra. We upheld the chancellor as to his finding that Mrs. Duncan did not sign the deed, however, in that case, the testimony showed conclusively that Mrs. Duncan could not sign her name and it was not executed by making her mark. Here the proof shows that Mrs. Thomas could sign her own name. In Lee v. Duncan, there was no expert testimony as to Mrs. Duncan's signature, whereas here we have the convincing testimony of Lacy that the signature of Rosetta Thomas appearing on the deed was affixed by the same person that signed the Texas Pacific Coal and Oil Company lease, which was not questioned. In the case at bar, we have the benefit of comparing the signature of Rosetta Thomas on the questioned deed with her proven signature on the lease, which was not the case as to Mrs. Duncan's signature in the Duncan case.

After a careful consideration of the whole record and an examination of the signatures, we think the chancellor was manifestly wrong in holding that the signatures were forged. The case will be reversed and judgment entered here for the appellants.

Reversed and judgment entered here for appellants.

*Roberds, P. J.,* and *Lee, Holmes* and *Ethridge, JJ.,*