Touchstone, d/b/a Touchstone Motor Sales *v.* Bond.

No. 39528          March 16, 1955          78 So. 2d 463

E. C. *Fishel,* Hattiesburg, for appellant.

Ben H. *Walley,* Leakesville, for appellee.

ROBERDS, P. J.

This suit was filed in the circuit court by Touchstone to recover a personal judgment against Bond for the unpaid purchase price of an automobile sold by Touchstone to Bond. Bond denied he owed any amount. He said he was induced to purchase the car by false and fraudulent material representations as to the condition of the Mercury car sold to him by Touchstone, vesting in him the right to rescind the contract, and also the right to recover from Touchstone $270, the value of a Ford car he delivered to Touchstone as the down cash payment on the Mercury automobile. Bond filed a counterclaim and asked for judgment for $270. The jury found against Touchstone and returned a verdict in favor of Bond in the sum of $135. Judgment was entered accordingly. Touchstone appealed to this Court.

The main ground urged by Touchstone on this appeal is that the evidence was insufficient to justify, or permit, a finding of the jury that any false material representations were made by Touchstone inducing this sale. Touchstone says that, although the jury had the right to accept the testimony of Bond and his witnesses, yet that testimony is not of such clear and convincing nature as to support the verdict of the jury. He made a motion to strike the counter-claim of Bond and for a peremptory for himself based upon the stated contention, which the trial court overruled. This calls for a brief summary of the testimony bearing upon false representations.

On October 24, 1953, Touchstone sold Bond the 1948 Mercury automobile. Bond delivered his Ford car as the down payment, valued at $270. That left Bond owing Touchstone $879.66. This was to be paid in monthly installments of $48.47 each, the first being due November 24, 1953. Bond signed the notes and the conditional

sales contract, which retained in the seller title to the car until the purchase price should be fully paid.

The testimony on behalf of Bond as to misrepresentations by Touchstone was in substance this:

Touchstone was in the business of buying and selling automobiles at Hattiesburg, Mississippi. On October 24, 1953, Bond went to that place of business. Dean McLendon was an agent of Touchstone in selling and trading automobiles. He and Bond were friends of long standing. Bond dealt with him. Bond testified that McLendon showed him the Mercury car and told him "* * * the motor was in good shape and that he would take care of anything that happened to it." Again, Bond said "* * * the engine was in good shape. Said there wasn't anything wrong with it." Again "he said the motor was in good condition. Good shape"; that it had been reconditioned; "he said the motor was in first class condition." Witness and Miss Lott (who later married Bond) and McLendon rode a short distance in the car, McLendon driving. Bond said he noticed the "engine chattered," and called McLendon's attention to that. McLendon said, "Well that little chattering in there wasn't going to hurt anything."

Mrs. Bond testified that he (McLendon) said the car was in good condition. "He told us that it was in A-1 condition and the motor had been overhauled."

Bond and Miss Lott drove the car to Bond's home at Beaumont, a distance of thirty miles, that Saturday afternoon. They said they noticed the engine was "chattering" and was getting hot. They found the water pump leaking. Mrs. Bond said the engine was knocking. Bond drained out the oil and replenished it with a standard brand of oil, but that the knock in the motor got worse. That night the two went for a ride in the car. Mrs. Bond said "The knocking was pretty bad in it

then — just a hard beating like something fixing to come out.''

On Tuesday, after the purchase on Saturday, Bond and Mrs. Bond (then Miss Lott) went back to Touchstone and complained about the car. Bond told them there was something seriously wrong with the car; that the motor was knocking and the water leaking. Touchstone installed a new water pump and said he would fix the other trouble later; that he was too busy to do the work that day. The following Saturday Bond brought the car to Touchstone a second time. He again explained that something was seriously wrong. He complained of the ''inserts.'' He said the rods were ''knocking.'' The radio did not work. He was told to take the radio to a named concern engaged in radio repairing and bring the car back later for the other repairs. He did deliver the radio as instructed. The next Saturday he came to Touchstone again. This time, in addition to other defects, it appears the car needed a ''head indicator.'' Touchstone then proposed to later remedy the defects if Bond would pay half the expense. Touchstone said the conditional sales contract obligated Bond to do that. Bond refused. He told them he would not accept the car and requested them to retain the Mercury automobile and drive him home. They refused both requests. Upon making another trip to the radio repairman, and finding nothing had been done to put it in working order, and being told the repairs would be made when Bond paid for them, he, Bond retook possession of the radio.

Now, McLendon, with whom practically all of the dealings were had, denied, in substance, that he made the representations as to the condition of the car, as testified to by Mr. and Mrs. Bond. However, he did admit that when they took the short ride in the car it was ''chattering,'' and that Bond complained of some other defects, and that he told Bond these would be remedied later. He denied that he told Bond the motor had been

reconditioned, but, instead, said that he told Bond that a Mrs. Stennett, from whom Touchstone bought the Mercury, had told him that shortly prior to the purchase of the car by Touchstone she had had the motor reconditioned. He admitted Bond came back a number of times and complained about the defects in the automobile. Mr. Touchstone himself heard very little of the conversations and negotiations between Bond and McLendon during, and after, the sale. However, the authority of McLendon to represent Touchstone is not questioned.

It should be added that on November 24, 1953, Touchstone assigned the conditional sales contract and the notes to a bank. On December 11th the bank, after Bond had failed to make his monthly payment due October 24th, under the foregoing circumstances, repossessed the automobile from Bond. Bond signed to the bank an agreement for it "to be by it dealt with in accordance with its rights under said conditional sales contract."

On December 21, 1953, the bank, after due notice, sold the car at public auction at the front door of the courthouse in Hattiesburg. The sale was made by Mr. Frank A. Polk and the car was purchased by Polk Financial Service, which appears to be a corporation engaged partly, at least, in purchasing repossessed used automobiles. The price bid for the car was $350. On December 29th, Touchstone paid the bank the balance owing it on this transaction and the bank reassigned the conditional sales contract and the notes to Touchstone. The fact involved in the bank transaction which is most pertinent to the question under consideration is the fact that the car sold at public auction for only $350.

Touchstone urges on this appeal that the foregoing testimony was not sufficient to support the finding of the jury that this sale was voidable because of erroneous and false statements of material facts inducing the purchase by Bond. He invokes the well established rule that fraud must be shown by clear and convincing proof and he cites the following late case so announcing the rule:

Martin v. Gill, 182 Miss. 810, 181 So. 849; New York Life Ins. Company v. Gill, 182 Miss. 815, 182 So. 109; Grenada Auto Company v. Waldrop, 188 Miss. 468, 144 So. 491; Truckers Exchange Bank v. Conroy, 190 Miss. 342, 199 So. 301; Hunt v. Sherrill, 195 Miss. 688, 15 So. 2d 426; Corley v. Myers, 198 Miss. 380, 22 So. 2d 234; Perkins v. Morgan, 210 Miss. 297, 49 So. 2d 383; Parker v. Laubenheim (Miss.), 60 So. 2d 815; State v. Cummings, 203 Miss. 583, 33 So. 2d 636. The Cummings case, however, was dealing with actual conscious fraud under a statute. ▋▋ It was not essential here that Bond show that McLendon willfully or knowingly made any misrepresentation of material fact. Rhyne v. Gammil, 215 Miss. 68, 60 So. 2d 500. ▋▋ ▋ A misrepresentation by a seller of a material fact, inducing the purchase, is a fraud in law although the seller may be ignorant of the truth of the statements. Fay & Egan Company v. Cohn & Brothers, 158 Miss. 733, 130 So. 290; Lizana v. Edwards Motor Sales Company, 163 Miss. 266, 141 So. 295. The headnote to the latter case reads "Material representations of fact by seller ignorant of their truth constitutes fraud in law, and seller must make his statements good." The seller may act in good faith believing the statements to be true. Bullard v. Citizens National Bank, 173 Miss. 450, 160 So. 280. ▋▋ And the misstatement need not be in any particular words so long as the impression created by the statement relied upon by the buyer was one which reasonably could be derived from the statement made, and which the seller reasonably could have anticipated the buyer would derive from the words used. Bullard v. Citizens National Bank, supra.

▋▋ Now, if McLendon told Bond the car was in good condition; that the motor had been reconditioned; that there was nothing wrong with it; that the car was in "A-1 condition" and that recently the motor had been "overhauled," and these statements induced Bond to purchase the car and the statements were untrue, then Bond had the right to avoid the contract of purchase. Certainly

these were statements bearing upon extremely material and important facts. ▮▮ ▮ The jury, in returning a verdict for Bond and avoiding the contract, necessarily found that the statements were made, that they were not true, and that they induced Bond to buy the automobile. We think the testimony amply supported the finding of the jury.

We have considered the other questions raised by appellant but find no reversible error.

Affirmed.

*Kyle, Arrington, Ethridge* and *Gillespie, JJ.,* concur.