Monsanto Company, et al. *v.* Cochran, et al.

No. 43692 December 6, 1965 180 So. 2d 624

*George P. Hewes, III, Brunini, Everett, Grantham & Quin,* Jackson, for appellants.

*Shannon Clark, Louie Bishop,* Waynesboro, for appellees.

Rodgers, J.

This suit was brought to cancel a lease on a filling station upon the ground of fraud, and for an accounting for rent due, and for punitive damages. It was filed in the Chancery Court of Wayne County, Mississippi, by the appellees against James H. Brownlee, J. P. Thorn-

ton, Monsanto Company, and the Lion Oil Company. Monsanto Company and Lion Oil Company are actually one company, and is hereinafter called Lion Oil Company.

A careful examination of this record reveals that this case grows out of an unfortunate misunderstanding. James R. and James S. Cochran, father and son, built a filling station on a corner lot they owned in Waynesboro, Wayne County, Mississippi. They leased the property to J. P. Thornton for a term of ten years, with an option to renew. It was agreed in the lease that Mr. Thornton would pay the owners, appellees, the sum of $100 per month, plus one cent per gallon of gasoline over 8,000 gallons sold at the service station. Mr. Thornton went into possession of the property and employed Mr. J. R. Richie to operate the station. Mr. Thornton also owned two other filling stations. Less than a year later, on April 15, 1964, Mr. Thornton, with the consent of appellees, sold his entire operation to the Lion Oil Company (except gasoline in the pumps), including an assignment of the lease on the property belonging to appellees. Mr. J. R. Richie continued to operate the service station, selling Lion Oil products, instead of "Conoco" products previously sold by Mr. Thornton.

The Assistant District Manager of the Lion Oil Company wrote a letter to appellees on May 1, 1964, requesting that the rental of one cent per gallon be computed on the number of gallons delivered to the station, rather than reading the meters on the pumps each month to determine the amount of rent due. The Lion Oil Company amended the contract of its agent James H. Brownlee of Laurel, Mississippi, so as to permit him to service the station purchased from Mr. Thornton. Appellees received the $100 rental for May 1964, but did not receive any rental for the gasoline sold over 8,000 gallons. They talked to Mr. Richie about the matter and discovered that Mr. Brownlee was delivering

404

two sets of invoices to Mr. Richie. These invoices indicated a discrepancy in the number of gallons sold to Mr. Richie. Mr. James R. Cochran called Mr. Brownlee's attention to this fact and advised he had received no rental on the excess gasoline sold. Thereafter, Mr. Cochran received a small check ($10.27 dated July 20, 1964). Mr. Thornton learned of the situation and informed Mr. Cecil Jones, Assistant District Manager for Lion Oil Company. The assistant manager and district salesman called on the Cochrans and obtained copies of the invoices. The Lion Oil Company sent the Cochrans checks for the full amount of the excess gasoline rental due. Appellees were dissatisfied and wanted to have a fixed rental of $175 or sell the Lion Oil Company the filling station. The Lion Oil Company would not agree to renegotiate the Thornton contract; whereupon, the appellees sued in the chancery court to cancel the contract. The chancellor entered the decree, cancelling the contract and awarding appellees a monetary judgment against the Lion Oil Company for $304.61 rental — the total sum of the checks admitted to be due by the Oil Company — and also the sum of $1,500 punitive damages. The decree is based upon the alleged fraud of James H. Brownlee in not reporting the excess gallonage sold to the station, and also upon the theory that Brownlee was acting as the agent of the Lion Oil Company and it had notice, and was therefore liable for the fraudulent acts.

We have reached the conclusion that the decree rendered by the chancellor in the instant case was manifestly in error and it must be reversed and rendered for the following reasons.

■■ ■ There seem to be few exceptions to the general rule that the courts of equity will not assess punitive damages. This rule is set out in 19 Am. Jur. *Equity* section 125 at page 125 (1939) as follows: "Exemplary or punitive damages will never be awarded, it seems,

the theory being that the complainant, by having applied to a court of equity, must be deemed to have waived all claim to recover other than compensatory damages." This point is annotated in 48 A. L. R. 2d section 4, at page 953 (1956), wherein the textwriter points out that "Some courts have based their denial of punitive damages upon the theory that an award of such damages is wholly incompatible with the basic principles of equity." And again it is said in section 5 at page 954 that "Some courts have denied punitive or exemplary damages in equitable proceedings on the theory that when a litigant seeks equitable relief, he thereby waives all claim to such damages." See also 15 Am. Jur. *Damages* § 278 (1938). Mississippi has adopted this rule in the following cases: Capital Electric Power Ass'n v. McGuffie, 226 Miss. 227, 83 So. 2d 837 (1955); Wilborn v. Balfour, 218 Miss. 791, 67 So. 2d 857 (1953); Neal v. Newburger Co., 154 Miss. 691, 123 So. 861 (1929); Hines v. Imperial Naval Stores Co., 101 Miss. 802, 58 So. 650 (1912); Annot. 48 A. L. R. 2d 958 (1956).

The record in the instant case does not show any evidence of an intentional wrong on the part of the Lion Oil Company, nor do we find facts to justify an inference that the acts of the Lion Oil Company were of such a character as to show any of the essential elements necessary to establish exemplary damages, such as willfulness, wantonness, malice, oppression, insult or gross fraud.

It is said in 15 Am. Jur. *Damages* section 278 at pages 713, 714, 715 (1938) that:

"While every legal wrong entitles the party injured to recover damages sufficient to compensate for the injury inflicted, not every legal wrong entitles the injured party to recover exemplary damages. The greater portion of actionable wrongs furnishes no basis whatsoever for the recovery of such damages. It is universally recognized that punitive or exemplary

damages, if recoverable at all, may be recovered only in cases where the wrongful act complained of is characterized by, or partakes of, some circumstances of aggravation, such as wilfulness, wantonness, malice, gross negligence or recklessness, oppression, contumely and indignity, outrageous conduct, insult, or gross fraud.''.

This rule is well-settled in Mississippi. See Interstate Oil Pipeline Co. v. Valentine, 236 Miss. 400, 110 So. 2d 369 (1959); Lynn v. R. G. LeTourneau, Inc., 237 Miss. 124, 113 So. 2d 659 (1959); Bradley v. Associates Discount Corp., 230 Miss. 131, 92 So. 2d 468 (1957).

It is the primary contention of the appellees that the decree of the chancery court should be affirmed and the lease contract cancelled, because, it is charged, the Lion Oil Company's distributor, James S. Brownlee, acting as the agent of the Oil Company, attempted to defraud them by not reporting to the Oil Company the actual number of gallons of gasoline sold from appellee's filling station.

The gist of appellees' contention is that the distributor was acting as the agent of the Oil Company, and that it had notice of the fraud and for that reason it is liable.

Mr. Brownlee admitted that he was making two invoices for a period of three months, but explained this by showing that the gasoline in the pumps at the time the lease was transferred belonged to him because he purchased it from Mr. Thornton, and contends that it was necessary for him to report this gasoline to the Lion Oil Company, as having been sold to Mr. Richie, except as to the number of gallons sold through the pumps. It is admitted that Mr. Brownlee paid for this gasoline, and that nothing was due for the month of April. He testified that there were certain people who were working for the Shell Oil Company who were purchasing gas from Mr. Richie at appellees' service station on the Shell courtesy card and that the Lion Oil Com-

pany did not honor the Shell card. There were other customers who were purchasing gasoline on ''Conoco'' courtesy cards. It was therefore necessary for the distributor to collect the indebtedness directly from the Shell Oil Company and Conoco before reporting this cash collection to the Lion Oil Company, and for that reason he did not make the report until he collected the money. There were also bulk sales made by the distributor through the service station, for which Mr. Richie did not want to pay, because he objected to paying rental on the bulk sales to others. Mr. Brownlee also testified that he was not familiar with some of the forms on which he was required to report to the Oil Company, and for that reason the rental report was delayed.

The records show that the Oil Company paid all that was due for rentals to the appellees and Mr. R. J. Cochran admitted that they did not charge in their original bill of complaint that they had not received all that was due to them as lessors under the contract before the suit was filed.

Appellees have cited two cases on which they base their contention that the Oil Company is liable for the alleged fraud of James S. Brownlee. The first of these is Billups Petroleum Company v. Hardin's Bakeries Corporation, 217 Miss. 24, 63 So. 2d 543 (1953). In that case a driver of one of the bakery delivery trucks was actually delivering less bread to the customer than he was collecting for, and at the same time, he was paying the bread company the proper amount for the bread actually delivered. This Court held in that case that the bread company was liable for the loss caused by the fraud of its agent. We said:

''We think that the trial judge was in error in holding that the Hardin's Bakeries Corporation was not liable for the dishonest acts of its sales agent.

'' 'It is well settled that the principal is liable for the frauds and misrepresentations of his agent within

the scope of the authority or employment of the agent, even though he had no knowledge thereof and has received no benefit therefrom.' 2 Am. Jur. p. 281, Agency, § 362." (217 Miss. at 33, 63 So. 2d at 546)

In *Billups* the Court required the bread company to pay to the customer the amount of money overcharged by the driver of the delivery truck, who was their agent.

The next case cited by appellees is Napp v. Liberty National Life Insurance Company, 248 Miss. 320, 159 So. 2d 164 (1963). This is a case where an insurance agent delivered an insurer's check for the amount due under a life policy and obtained part of the money due the insured, and it was pointed out that the deliverer of the check was an agent of the insurance company under Mississippi Code Annotated section 5706 (1956). In that case, the Court cited *Billups* and said: "In the instant case, the agent paid less than he was supposed to pay. If appellant's testimony be accepted as true, then the company has not paid its debt." Thus, it is seen, the principal in both cases was required to pay the shortage caused by the wrongful acts of their agents.

In the instant case, the Lion Oil Company was liable to the lessors, appellees, for the rent of $100 per month and one cent per gallon over 8,000 under the terms of the lease contract, regardless as to whether or not the distributor, was the agent of Lion Oil Company, and whether or not he was attempting to defraud appellees. The Oil Company paid all of the rent due appellees, and since appellees could not recover punitive damages in the chancery court, none was due because there were no other damages alleged or demanded by appellees.

The general rule on this subject is found in 23 Am. Jur. *Fraud and Deceit* section 20 at pages 771, 772 (1939) in the following language:

"The ground of the tort action based upon fraud, the action of deceit, is fraud and damage, and when both concur the action will lie. Moreover, both must concur

to constitute actionable fraud, a common statement of the rule being that neither fraud without damage nor damage without fraud is sufficient to support an action.''

The same textwriter, on the same subject, also points out in section 172 at pages 985, 986, 987 that:

''It is a fundamental principle of law that, with the exception of special cases recognized only in some jurisdictions, in order to secure relief on a basis of fraud either at law or in equity, the person seeking redress must have been damaged, injured, or harmed as a result of the asserted fraud, or, as the principle is often formulated, he must thereby have been misled to his hurt. . . . Moreover, relief will not be granted where the representations have been made good so that the plaintiff receives no injury therefrom. Mere intention to defraud without carrying the fraudulent intent into effect is also not actionable.''

The following section 173 at page 987 states:

''Although the courts are in agreement upon the fundamental problem that in order to secure equitable relief on the basis of fraud, some injury or damage must be shown by the complainant, and have frequently applied this principle in cases where rescission on the ground of fraud is sought. . . .''

See also 37 C. J. S. *Fraud* § 121 (1943).

In the case of Salter v. Aviation Salvage Company, 129 Miss. 217, 91 So. 340 (1922), where certain purchasers contended that under the facts and circumstances they bargained to purchase certain property, and through the concealment of the seller, the property was not included in the contract and therefore they rightfully took possession and appropriated it to their use. This Court said:

''It is true appellees thought they were buying all the property which appellant had bought, but it is not true that they thought they were buying the flooring

and the oil house. Concede, for argument's sake, that they were led into that state of mind through the fraud of appellant. The question is: How were they hurt by such conduct on the part of the appellant? We are unable to see.''

The Court then pointed out that the purchasers got all of the property that they purchased.

The case at bar resolves itself into the question as to whether or not the failure of a distributing agent to report the full amount of gasoline sold, resulting in the failure of the company to pay all of the rent due on a lease contract was so fraudulent as to cause a breach of the lease contract. In the instant case, the contract did not specify when the rent was payable; nor did it contain a forfeiture clause for the failure to pay rent at a particular time.

We have heretofore held that the failure to pay rent at the time it was due would not result in a forfeiture of a lease even where the lease contract contained a forfeiture provision. In the case of Senter v. Propst, 190 Miss. 190, 197 So. 100 (1940), where the appellee Propst brought a suit against the appellant for relief in a forfeiture of a lease for lack of payment of rent. This Court, quoting from Pomeroy, 1 Eq. Jur., 4th Edition, Section 453 (1918) said:

''Where the lease contains a condition that the lessor may re-enter and put an end to the lessee's estate, or even that the lease shall be void, upon the lessee's failure to pay rent at the time specified, it is well settled that a court of equity will relieve the lessee and set aside the forfeiture incurred by his breach of the condition whether the lessor has or has not entered and dispossessed the tenant. This rule is based upon the notion that such condition and forfeiture are intended merely as a security for the payment of money.'' (190 Miss. at 206, 197 So. at 103)

It was also pointed out in that case:

"In the case of Kann v. King, 204 U. S. 43, 37 S. Ct.
213, 216, 51 L. Ed. 360, 363, the Supreme Court of
the United States said: 'That a court of equity, even
in the absence of special circumstances of fraud, ac-
cident, or mistake, may relieve against a forfeiture
incurred by the breach of a covenant to pay rent, on
the payment or tender of all arrears of rent and in-
terest by a defaulting lessee, is elementary.'" 190
Miss. at 206, 197 So. at 103)

In 30 C. J. S. *Equity* section 56 (1965) it is pointed
out that equity ordinarily will relieve a tenant from
forfeiture of nonpayment of rent at the time it is due,
and this has been said to be the rule, even though the
breach is willful on the part of the tenant.

In 51 C. J. S. *Landlord and Tenant* section 104 (b)
(1947) at page 683, it is said:

"In the absence of a statute to the contrary, a tenancy
cannot be terminated for a breach of covenant by the
lessee unless there is an express.and distinct provision
in the lease for a forfeiture or right of reentry on the
occurrence of the breach . . .

"The rule that an express provision in the lease is
necessary in order to work a forfeiture applies equally
well not only to a breach of covenant to pay rent but
also to the breach of a covenant against assigning
or subletting. . . ."

In the case of Clark v. Service Auto Company, 143
Miss. 602, 615, 108 So. 704, 706, (1926), Annotations
49 A. L. R. 511 (1927), this Court pointed out that
"At common law, nonpayment of rent does not operate
in the absence of a provision therefor in the lease as a
forfeiture of the term or confer upon the lessor the right
of re-entry."

In the case of Louisiana Oil Corporation v. Frye,
169 Miss. 861, 154 So. 274 (1934), this Court dealt with
the question as to whether or not a lease contract could

be cancelled by the lessor-employee because the lessee-employer had to dispense with the service of the lessor-employee, as provided in the employment contract. The lease contained no provision for its termination in such case. This Court said:

"There were no allegations of mutual mistake in executing the lease, nor anything proven which would justify the court in reforming the contract, and no such relief was specifically asked for.

"We think the contract exhibited to the bill was the exponent of their own terms, and that it was not proper to grant the relief prayed for, or any relief; and, consequently, the judgment of the court below must be reversed and the cause dismissed. . . ." (169 Miss. at 864, 154 So. at 274)

██ ██ We are of the opinion, therefore, that since the lease contract did not contain a forfeiture clause for failure to pay rent on a certain day — and since the appellees received all the rent due them and punitive damages could not be awarded in an equity court — appellees could not maintain an action to cancel the lease contract for alleged fraud of the Lion Oil Company's distributor. ██ ██ Equity abhors a forfeiture and is disposed to seize on slight circumstances to avoid a forfeiture. (30 C. J. S. *Equity* § 56 (a) at 888-890, 1965).

██ ██ Moreover, from the evidence as a whole, recorded in this case, we are of the opinion that, although the testimony shows a failure of the distributing agent to report to the Lion Oil Company all of the gasoline sold at the filling station and shows a duplicate set of invoices to the station operator, nevertheless, when the entire evidence, including the explanation of the distributing agent Brownlee is considered, the facts are not sufficient to establish fraud by clear and convincing proof required by law. See Taft v. Taft, 252 Miss. 204, 172 So. 2d 403 (1965); Touchstone v. Bond, 223 Miss. 487, 78 So. 2d 463 (1955); Mayfield Motor Co. v. Parker,

222 Miss. 152, 75 So. 2d 435 (1954); Osborn v. Thomas, 221 Miss. 682, 74 So. 2d 757 (1954); Perkins v. Morgan, 210 Miss. 297, 49 So. 2d 383 (1950); Corley v. Myers, 198 Miss. 380, 22 So. 2d 234 (1945), Sug. of Error 198 Miss. 380, 22 So. 2d 575 (1945), Motion 198 Miss. 380, 23 So. 2d 302 (1945); Hunt v. Sherrill, 195 Miss. 688, 15 So. 2d 426 (1943); Truckers Exchange Bank v. Conroy, 190 Miss. 242, 199 So. 301 (1940); Grenada Auto Co. v. Waldrop, 188 Miss. 468, 195 So. 491 (1940); Laurel Auto Supply Co. v. Sumrall, 184 Miss. 88, 185 So. 566 (1939); Martin v. Gill, 182 Miss. 810, 181 So. 849 (1938); 37 C. J. S. *Fraud* § 114 (a) (1943).

We are of the opinion, and so hold, that the decree of the chancery court is manifestly erroneous and should be reversed. Checks made payable to appellees James S. Cochran and James R. Cochran by the Lion Oil Company should be returned to them, and the original bill should be, and is, hereby dismissed.

Reversed and rendered, with directions that the checks made payable to appellees be turned over to them.

*Lee, C. J., and Jones, Inzer and Smith, JJ.,* concur.