INTERSTATE OIL PIPE LINE COMPANY *v.* VALENTINE.

No. 41061         April 6, 1959         110 So. 2d 369

*Jones & Stratton,* Brookhaven; *Welch, Gibbes & Graves,* Laurel, for appellant.

*E. K. Collins, George Maxey,* Laurel, for appellee.

Roberds, P. J.,

In November 1954 the Interstate Oil Pipe Line Company, the appellant herein, completed the construction of a pipeline in Jones County, Mississippi, for the transmission of crude oil. It was a four-inch line. Valentine, the appellee, owns a tract of two hundred and eighty-two acres of land. The pipeline was constructed near, but not upon, Valentine's land. Mill Creek runs near the pipeline and meandors across the lands of Valentine. On or about January 28, 1957, a slit or break occurred in a section of the pipeline, permitting oil to escape therefrom. Valentine brought this suit against appellant and its employee Thompson, claiming that the pipe in which

the break occurred was defective, that appellant was negligent in not detecting the defect in the pipe when it was laid, and that appellant did not properly inspect the pipe after it was laid; and was also negligent in setting fire upon the lands of Valentine, all of which caused Valentine damage in the sum of $20,000, for which he brought suit. Valentine charged that he had one hundred and forty cows grazing upon his land and that eighteen cows and two calves died as a result of drinking water saturated with crude oil and that the remainder of his herd lost from three hundred to four hundred pounds each in weight; and that he was damaged also by the destruction of timber on his land. Appellant denied all negligence. The jury returned a verdict for Valentine against the Pipe Line Company for the sum of $7,500, and the Pipe Line Company appealed. The case was dismissed as to Thompson, from which action Valentine did not appeal.

■■■ The court granted Valentine the following instruction: "The Court instructs the jury for the plaintiff that if you believe from a preponderance of the evidence in this case that the Ham Line was under the management and control of the defendant at the time and place of the break complained of, and further believe from a preponderance of the evidence that said break was such as does not in the ordinary course of things, happen, if the person or persons in management and control uses reasonable care and caution, it affords reasonable evidence, in the absence of explanation, that the break was the result of want of care on the part of the defendant." The principle announced in that instruction is called the doctrine of res ipsa loquitur. Its application in proper cases has been recognized by this Court through the years. In Peerless Supply Company, Inc. v. Jeter, 218 Miss. 61, 65 So. 2d 240, the doctrine was defined in these words: "The conclusion to be drawn from the cases as to what constitutes the rule of res ipsa loquitur is that

proof that the thing which caused the injury to the plaintiff was under the control and management of the defendant, and that the occurrence was such as in the ordinary course of things would not happen if those who had its control or management used proper care, affords sufficient evidence, or, as sometimes stated by the courts, * * * in the absence of explanation by the defendant, that the injury arose from or was caused by the defendant's want of care." In that opinion the Court cited previous cases announcing the doctrine. We think it was applicable to the facts of the case at bar. The pipe was installed by appellant and it was under appellant's exclusive control and management. The thing which produced the damage, the break in the pipe, was not such as in the ordinary course of things would have happened had appellant used care, and the initial cause of the break is not explained. We are of the opinion that the instruction was properly granted in this case.

But appellant says that even though it was proper to grant the foregoing instruction, that nevertheless the testimony which it offered overcame any presumption of negligence which resulted from the announcement of the foregoing rule as applied to the facts of this case. On that question the jurors could have found from the testimony in behalf of appellant that the piece of pipe in which the break occurred was carefully and properly inspected and tested before its installation; and that due care was used in the selection of the pipe and it was suitable for the use to which it was put.

On the other hand, it was shown that this was No. 2 pipe and that the break occurred in about two years and two months time, a much shorter time than pipe of the proper quality should have lasted. Fred McVey, a son-in-law and witness for Valentine, testified that he had worked at the business of installing gas pipeline for some thirty years, that he was thoroughly familiar with the type and kind of pipe suitable to be used for

transmission of crude oil. He saw this pipe before it was laid. He said it was "in mighty bad condition for a pipeline with any pressure on it." He also said it had rust pits on it; that the pipe was too rusty for him to tell what it was made of; that it had no name on it and that it was manufactured "way back yonder." He said it had been patched and it was a very rusty piece of pipe. There is also evidence to the effect that pipe of the proper quality would not have broken under the pressure on this line. The proof shows appellant had recently added another pump and that this considerably increased the pressure. Hughes, District Superintendent of appellant, testified that he did not know what caused the pipe to break. He said: "We don't know. We have not been able to get a solution to the thing." It is unnecessary to detail further testimony. We think it was a question for the jury to determine whether appellant had overcome the presumption that this was a defective piece of pipe. It is noted also in this connection that appellant never inspected this pipeline at all from the time of installation to the time the break occurred.

Valentine was granted the following instruction: "The Court instructs the jury for the plaintiff that in addition to actual damages, if any, if you believe from a preponderance of the evidence in this case that agents of the defendant wilfully set fire to property of plaintiff, then you may, in your discretion and in addition thereto, assess punitive damages, that is damages by way of punishment to the defendant so as to compel it to have a proper regard for the rights of the public." The Pipe Line Company says that was reversible error. This Court has many times defined the elements constituting punitive damages. Cases may be found in Mississippi Digest, Vol. 5, under the heading "Grounds for exemplary damages," Key No. 91 (1). The last pronouncement of this Court was this: "Of course, punitive damages may be awarded in a proper case in an action for wrongful in-

jury to property. However, such award will be allowed 'only where such injury is attended by circumstances of willful fraud, malice, or gross negligence.' 25 C. J. S., Damages, Section 121 c, p. 718.'' The Greyhound Corporation v. James Townsend, 234 Miss. 839, 108 So. 2d 208. The pertinent testimony bearing upon the question of punitive damages is this: When the appellant learned of the break in the pipe, it sent a number of employees to the scene. The oil was going into and floating down Mill Creek. These employees, in an effort to remedy the situation, undertook to build a dam across Mill Creek to collect the oil upon the waters of the creek. They then undertook to burn the oil. They wrapped sacks about spades and shovels and saturated the sacks with kerosene and lighted the kerosene and placed the fire upon the oil. A night or two after this break occurred there was a very heavy rain in that section. This rain caused Mill Creek to overflow. It covered the land of Valentine for some seventy-five yards back from the Creek. This overflow carried considerable oil onto the Valentine land. The employees of the Pipe Line Company undertook to burn this oil off of the land, using the method above-described. They did that until Valentine stopped them. This record discloses no evidence which, in our opinion, would justify a jury in finding that the acts of these employees, in trying to get rid of the oil, included any element of punitive damages. Nor can it be said that the verdict rendered in this case was based alone upon actual damages. There is ample testimony which would have called for a judgment for much less than $7,500. This pronouncement, taken from the case of Gulf, M. & N. R. Company v. Marshall, 92 So. 236 (Miss.), is applicable to the facts of this case: ''The evidence does not warrant the imposition of punitive damages; consequently the court below erred in instructing the jury, that they might award damages of that character; and, since it does not appear that any such damages

are not included in the verdict, the judgment of the court below must be reversed, and the cause remanded for a new trial on the question of the amount of damages only.''

Reversed and remanded for the determination of the amount of damages only.

Reversed and remanded.

*Hall, Lee, Kyle* and *Holmes, JJ.*, concur.