WESTON DRILLING COMPANY, et al. *v.* TUPPER, et al.

No. 42269          March 26, 1962          139 So. 2d 361

*Forrest B. Jackson,* Jackson, for appellant.

*Harmon W. Broom,* Jackson, for appellees.

Kyle, J.

This case is before us on appeal by Weston Drilling Company, a corporation, and Larco Drilling Company, a copartnership composed of I. P. LaRue, Jr., Fred C.

LaRue, Harry D. Owen and Mrs. Ruthie LaRue Owen, defendants in the court below, from a judgment of the Circuit Court of the Second Judicial District of Hinds County rendered in favor of S. Y. Tupper, W. G. Redfield and Mrs. Zeita Redfield Tupper, copartners doing business under the trade name of W. G. Redfield Estate, plaintiffs in the court below, in a tort action for property damages resulting from the pollution of the waters of Watson Creek, a stream running through the pasture land of the plaintiffs, which had become polluted with crude oil escaping from the defendants' pipeline.

The record shows that the plaintiffs owned approximately 400 acres of pasture land which had been planted in improved grasses during the late summer of 1959; that the pipeline leakage was discovered a few days after the first day of April, 1960, when the plaintiffs' farm manager observed oil bubbling out of the ground in Watson Creek, which ran through the 400-acre tract; that the defendants were notified immediately, and the break in the pipeline was repaired; but nothing was done about bringing under control the oil which had escaped from the leaking pipeline. Heavy rains fell within a few days thereafter and the oil was spread over approximately 70 to 80 acres of the improved pasture. At the time the pipeline leakage was discovered there were approximately 100 cows and calves and a few steers on the 400-acre tract. Eight head of cattle died before the cattle were removed to another pasture.

The plaintiffs charged in their declaration that the defendants were guilty of negligence in that they failed and neglected to maintain their pipeline in a proper condition, and in that, after they were given notice of the leakage in the pipeline, they negligently failed and refused to take any action to correct the condition resulting from the leakage of the crude oil from the pipeline. The plaintiffs alleged that a few days after the leakage occurred there came a heavy downpour of rain

and the water courses on the plaintiffs' land were flooded, and the seeping oil was spread over approximately 70 or 80 acres of highly improved pasture land, and that as a result thereof the plaintiffs' pasture land was damaged and the plaintiffs suffered the loss of eight head of cattle. The plaintiffs asked for actual and punitive damages in the sum of $15,000.

The jury, after hearing the testimony, returned a verdict for the plaintiffs for the sum of $7,500, and judgment was entered against the defendants for that amount.

The appellants' attorney has assigned and argued only one point as ground for reversal of the judgment of the lower court, and that is, that the plaintiffs failed to make out a case against the defendants and the court erred in refusing to grant the defendants' request for a peremptory instruction.

We think there is no merit in that contention. The plaintiffs' proof was sufficient to present an issue for the jury to decide.

The plaintiff, Sam Y. Tupper, testified that the W. G. Redfield Estate partnership owned approximately 3,000 head of cattle, and the bulk of the partnership income was derived from the cattle business. The defendants' pipeline ran through one of the tracts of land owned by the Redfield Estate partnership. Duck Allen, a colored man, owned a small tract of land adjoining the estate lands, and the break in the pipeline occurred on the Duck Allen tract. The estate land adjoining the Duck Allen tract consisted of approximately 400 acres which were devoted to the pasturage of cattle. The land had been planted in improved grasses during the late summer of 1959. There were approximately 100 cows and calves and a few steers on the 400-acre tract at the time the break occurred in the pipeline. Watson Creek ran through the 400-acre tract. Tupper stated that he and Dave V. Bishop, his farm manager, rode over the land

about the first week in April, 1960, and that he observed oil bubbling out of the ground in the bottom of the ditches, and all the way up the creek for a distance of approximately one mile; that he immediately went to his office and called Mr. LaRue on the telephone and told him exactly what he had found; that he told Mr. LaRue that he would like for him to get the oil off of his place immediately, that if a flash flood came he would be in serious trouble; and that Mr. LaRue did nothing about the matter. Tupper stated that after he discovered the oil on the land he kept a careful lookout over the pasture from day to day, and then he noticed the cattle started dying; that a heavy rain came, and the oil got over the pasture land adjacent to the creek, and it looked like an awful lot of oil; that he talked to Mr. R. C. Pope, the defendants' field foreman, and he talked to Mr. LaRue and the foreman at Bolton, requesting that they come and remove the oil from his land; and after eight head of cattle had died he moved the cattle to another pasture. Tupper stated that the oil on the creek and in the ditches was later burned, and he had the land plowed again and disced, and put the cattle back in the pasture.

Dave V. Bishop, farm manager for the Redfield plantation, testified that the creek flowing through the 400-acre tract of land ran in a southwesterly direction from the Duck Allen line, and there was a considerable part of the Duck Allen land that drained through that creek. He stated that there were between 110 and 120 head of cattle in the pasture, and the pasture was in good condition during the spring of 1960 before the pipeline broke. The cattle could get water from the creek that ran through the place. He stated that a heavy rain fell a few days after the pipeline leakage was discovered, and the oil was spread over 70 or 80 acres of the pasture land. Bishop was asked about the cattle that were lost; and he stated that eight head of registered

cattle were lost. That number included two young registered bulls, four cows, a steer and a calf. He stated that after the cattle died the bodies were burned. On cross-examination Bishop stated that no chemical examination was made of the water in the creek; he dipped three or four cans of oil from the creek, but he did not have it analyzed. It was crude oil, with the odor and looks of crude oil. He had no chemical analysis made of the crude oil. None of the pipeline people came over there to tell him that they were doing anything to get rid of the oil. On cross-examination, Bishop was asked whether he knew what caused the cattle to die. His answer was, "I know they died within a few feet of this stream and all died in a hurry. That's the reason I moved the cattle." Bishop was asked whether he had an autopsy or a post-mortem examination made of the dead animals to determine the medical cause of death. He said, "We did not — we felt that we knew that was the cause."

Two other witnesses testified for the complainants, and Sam Y. Tupper was then recalled to testify as to the value of the cattle that died and the damages sustained as a result of the overflow of the oil onto the pasture land and the loss of use of the pasture during the grazing period from April to September.

R. C. Pope and Jack Williams were the only witnesses who were called to testify on behalf of the defendant, Weston Drilling Company and the Larco Drilling Company. Pope testified that he received information about the breaking of the pipeline above the Redfield plantation from the foreman in the field; that, when he received the information about the matter, Jack Williams went out and repaired the leak; and that the leak had been repaired when Mr. Tupper talked to him on the 'phone. He stated that the pipeline was a six-inch steel pipeline. The joints were welded together, and the line was inspected once a week. On cross-examination Pope

stated that Duck Allen notified Jack Williams about the leakage in the pipeline, and Jack went to the site that same afternoon with a gang of roustabouts and repaired the leak. Pope admitted that they had several good rains about that time, and that Mr. Tupper told him that he was in a serious situation. He stated that he sent someone down there to inspect the property and get with Mr. Tupper's foreman, and they came up with a decision to burn the oil off of the creek.

Jack Williams testified that he had supervision over the defendants' pipeline from the Bolton field to the Mississippi River at Vicksburg; that he got information about the break in the pipeline from Duck Allen; that he got a crew together to fix the leak; and when he got to the break the oil was on top of the ground. The break was directly behind Duck Allen's house. Williams stated that the pipeline was about 30 inches below the surface and was covered over with dirt; that he had a hole dug so that he could repair the pipeline, and oil accumulated in the hole while he was digging; that he found a hole in the pipeline, just a small pin hole between the joints; and he repaired it with clamps. Williams was asked whether anything was done by the crew who went to repair the leak with reference to the oil that had accumulated in the ditches or drains or creek around there. He said nothing was done about that. He stated that sometime later some one called him and said that the woods were on fire, and he got a crew and went out there. He found the fire on Mr. Tupper's place. Neither he nor anyone else with Weston or Larco had put out the fire on the creek. But after he went there he helped burn it off by pouring gasoline on the oil and burning it up and down the branch.

It was stipulated and agreed at the beginning of the trial that Dr. W. H. Lindley, a duly licensed and practicing veterinarian of Vicksburg, Mississippi, if

present and permitted to testify, would testify that he had not performed an autopsy or made an examination of the animals in question in this lawsuit, but that he would testify that, in his professional opinion based upon the authorities and his knowledge of the situation, if the cattle had drunk water containing amounts of crude oil, it would cause a toxic condition in the system of the cattle which would cause them to die.

In Interstate Oil Pipe Line Company v. Valentine, 236 Miss. 400, 110 So. 2d 369, the Court held that the doctrine of res ipsa loquitur was applicable to an action for the damage sustained when a break occurred in the defendant's pipeline and oil escaped into a creek which meandered across the plaintiff's land; and that on the record presented in that case, it was a question for the jury to decide whether the presumption of negligence arising from the application of the doctrine had been overcome.

We think the rule thus stated is applicable in this case; and from the record presented, the issue as to the negligence of the defendants was properly left for the jury to decide.

The judgment of the lower court is therefore affirmed.

Affirmed.

*McGehee, C.J.,* and *Ethridge, Rodgers* and *Jones, JJ.,* concur.